# Feig et al. *versus* Meyers.

1. A married woman, who is in joint possession of her land with her husband, under an unrecorded deed to her, is not estopped from setting up her title as against judgment creditors of her husband, whose debts were contracted, without notice of her title, and on the faith of his ownership of the land as shown by the record of the return and confirmation of an Orphans' Court sale of the premises to him.

2. The mere fact that the name of the grantee in a deed, otherwise unimpeached, is in a different writing from the body of the instrument, does not render it inadmissible in evidence. The burden is on the party objecting to it, to show alteration or additions subsequent to delivery.

3. Evidence of declarations of a married woman in possession of land claiming title as against her husband's creditors, to the effect that she obtained money from her father which she paid for the land, is inadmissible. Thus, where a witness testified that he saw plaintiff's father hand her on Christmas eve "a roll of something—looked like a roll of money," and was further permitted to testify, under objection, that the next day "she said the Christmas gift her father had given her was $500," this was held to be error requiring reversal of the judgment in her favor.

4. A married woman instructed her husband to buy for her certain real estate at an Orphans' Court sale in partition; the property was struck down as sold to him, and the sale was so returned to and confirmed by the court. The purchase-money was paid by him with his wife's money, and the deed was made to her as grantee, her name, however, wherever it occurred, being in a different handwriting from the body of the instrument. She did not record the deed until seven years after the sale. In the meantime, the husband contracted a debt, as alleged, on the faith of his ownership of the property, on which debt judgment was obtained and the premises sold in execution as his property. The purchaser at the sheriff's sale obtained possession, and in an action of ejectment against him by the wife, in her name alone, it was *Held :*
1. That the wife was not bound to record her deed under pain of losing her land if seized by her husband's creditors. 2. The deed to the wife, made under the circumstances above stated, was valid to vest the title in her, and was properly admitted in evidence. Even if the deed had been made to the husband, the facts alleged by her and found by the jury, would have vested the title in her by a resulting trust. 3. The fact, that the wife brought ejectment in her own name, without joining her husband, not having been objected to in the court below, where the defect could have been amended, is not ground for reversal; the omission might be cured by amendment in the Supreme Court, after writ of error taken. 4. Declarations of the wife that she received money from her father to pay for the land, are not admissible, in her behalf.

December 7th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Somerset county :* Of July Term 1882, No. 229.

Ejectment, by Rebecca C. Meyers, against John Feig et al., for a lot of ground in Berlin borough, Somerset county. Plea, not guilty.

[Feig *v.* Meyers.]

On the trial, before ROWE, P. J., it was admitted that Charles Heffley died seised of the premises in dispute in 1868.

The plaintiff, Mrs. Rebecca Meyers, claimed under an Orphans' Court sale in partition, made March 25th 1870, duly confirmed May 5th 1870, and she offered in evidence the record thereof and a deed dated June 10th 1870, from Josiah Heffley and George Heffley, administrators and trustees for sale of real estate of Charles Heffley, deceased, to herself, recorded in March, 1877. Objected to because the said record of the Orphans' Court shows that the sale was made to Emanuel J. Meyers, and so returned and confirmed, while the deed is made to Rebecca J. Meyers; further, because the name of the grantee "Rebecca C." and the words "her" and "she" wherever they occur are in a different handwriting from the body of the deed. Objections overruled. Exception. (7th assignment of error.)

The plaintiff offered to prove, by her husband, Emanuel J. Meyers, that he bought the property at the sale in partition at her solicitation, and it was knocked off to him for $2,004; that a day or two before the sale his wife suggested that she wanted that property. Objected to. Objection overruled. Exception. (5th assignment of error.)

This witness testified that he bought the property for his wife, at her request, and the cash payment of $304 made by him at the sale was her money which he got from her and which she had received from her father. The deed was made to his wife at his direction, subject to the payment of $850 to the mother of Charles Heffley and $850 to his widow; that the interest thereon and subsequently the principal of one of said sums was paid with his wife's money which she got from her father's and mother's estate; that she obtained from her parents estates in all $6,500, in money and notes, some of which he had borrowed from her and had given her notes therefor. It appeared that Emanuel J. Meyers gave his bond to secure the above mentioned dower rights.

Plaintiff's counsel offered to show by Charles Shank, that D. J. Lichty, plaintiff's father, come to plaintiff's house the evening before Christmas, 1870, and threw a roll in her lap that looked like a roll of money, saying at the time it was a Christmas gift, and that plaintiff next morning said it was $500 of money, whilst D. J. Lichty was still at her house. Objected to, because the plaintiff's declarations are not admissible. Objection overruled. Exception. (9th assignment of error.)

Plaintiff offered in evidence a deposition of Harvey Meyers. Objected to, as to so much as gives the declarations of the husband, because his declarations are not admissible to make title in the wife. Objection overruled, and the whole deposition admitted. This deposition contained, inter alia, the following:

[Feig *v.* Meyers.]

"Father bought it for my mother. I heard him say he bought it for her, and I heard her tell him to buy it for her before the sale. I saw her give father money to make the first payment." (6th assignment of error.)

After the purchase of the property, Emanuel J. Meyers and Rebecca C., his wife, took joint possession, and improvements were made, under the supervision of the husband, who also insured the house. The property was assessed in his name, and he paid the taxes.

The defendant, Feig, testified that he loaned money to Emanuel J. Meyers, in 1875, on the faith that Meyers owned the property in dispute, in which he then resided, that Meyers told him he was the owner. Emanuel J. Meyers subsequently became embarrassed, and Feig obtained judgment against him, and in 1877 issued execution, sold the property in dispute at sheriff's sale, and himself bought it in, receiving a sheriff's deed therefor May 1st 1879. Subsequently in 1879 Feig brought an action of ejectment against Emanuel J. Meyers and Rebecca C., his wife, obtained a verdict, and afterwards obtained possession. Plaintiff subsequently brought this suit against him.

The court, in affirming plaintiff's first point, which was, in substance, that if the lot was bought by the husband for his wife, the plaintiff, with her money, and the deed was made in her name, the verdict must be for the plaintiff, said : "I affirm this point: she must show that the property was, bought for her ; that she had the means to buy with ; and that she applied those means in payment of the purchase-money. And this she must show by evidence at once clear and so full and satisfactory that the jury can rely on it with reasonable certainty."

The defendant presented, inter alia, the following points :—

3. That if the jury believe from the evidence, that the debt of John Feig was contracted by E. J. Meyers before the alleged deed to Mrs. Meyers was put upon record, and upon the faith of the title to the property being in Mr. Meyers, and upon his representation that the title was in him, and she permitted the trustees to return the property sold to her husband, and the Orphans' Court record showing title in him to stand unchanged ever since the purchase by him in 1870, and suffered her husband to exercise exclusive acts of ownership and dominion over the property, and to hold himself out to the world as the owner thereof—such as representing himself to be the owner and dealing with it as owner, having it assessed to him, paying the taxes on it, making improvements thereon in his own name, and insuring it in his name—then she is estopped from setting up title in herself, and the verdict must be for the defendants.

Answer. The defendant's third point is refused. If the wife was the grantee named in the deed, and her money paid

for the property, she is not estopped by such things. A married woman does not convey or lose her lands by estoppel. She can only convey her lands in one way—by deed with separate examination. She can be estopped only in those cases where she has power to act or contract by herself. (First assignment of error.)

(5) That if a husband or wife purchases land and pays for it, and has the deed made to the other, there is no presumption of a resulting trust in favor of the one who pays for it. Such presumption of trust arises only between strangers. As between husband and wife, the law presumes it to be a gift.

Answer. If a husband purchases land and pays for it himself, but has the deed made to his wife, it is a gift, no trust results. The land is the wife's except as against her husband's creditors. (Second assignment of error.)

(8) If the jury believe that the deed was drawn with the Christian name omitted, but that it was the intention of the grantors to make the deed to Emanuel J. Meyers, the party to whom the property was sold at the trustees sale, and so returned to and confirmed by the court and the purchase-money secured by him; and that by mistake it was delivered to Emanuel J. Meyers in that condition, then the subsequent insertion of the name of Rebecca C. Meyers, without the consent of the grantors, would not convey the title to her, but the title would remain in Emanuel J. Meyers, and the defendant Feig, having purchased his title, the verdict must be for the defendants.

Answer. I do not affirm this point. There is no evidence to support it. And even if the deed was delivered blank as to name of grantee, but afterwards the wife's name was filled in, and she paid all the purchase-money, it would give her title. (Third assignment of error.)

10. That as the evidence on the part of the plaintiff shows that the name of Rebecca C. Meyers was inserted by another party than either the counsel who wrote the deed, or the one who delivered it, but does not show that it was done with the consent of the grantors, the plaintiff has failed to show such a title to the land in dispute as would entitle her to recover, and the verdict must be for the defendants.

Answer. Refused. (Fourth assignment of error.)

The court charged, inter alia, as follows:

" Under proceedings in partition of the real estate of Charles Heffley, deceased, Josiah and George Heffley, his administrators, were appointed by the court to sell this property, and did sell it on 25th March 1870, for $2,004.' [It was knocked down to Emanuel J. Meyers, the husband of the plaintiff, and was returned to court as sold to him and the sale so made and returned was on the 5th day of May 1870 confirmed by the court. On the following 10th of June, the administrators made

[Feig *v.* Meyers.]

and delivered a deed therefor in pursuance of the sale. That deed is here and the grantee named therein is the plaintiff, Rebecca C. Meyers.] (Eleventh assignment of error.)

" Was the property bought for her? She, her husband and her son tell you that it was. The return of sale makes against her. [The deed as it now appears makes in her favor, showing that at the beginning the title was put in her. The deed is to Rebecca C. Meyers.] (Twelfth assignment of error.)

" It seems that in 1870 E. J. Meyers was a man in good financial circumstances; no debts, no creditors to cheat; contemplating no hazardous venture. If, such being the case, he had the deed made in the name of his wife, it shows the house and lot was bought for her. [Therefore the defendant avers that this deed was not always as it now appears. You start, however, with the presumption that it was. The name of Rebecca C. Meyers is written in it as grantee, and there is not the least appearance of erasure on the face of the paper.] (Thirteenth assignment of error.) ·

" [Then the defendant tried to show by Dennis Meyers that by the use of certain chemical agencies a writing might be taken out without injury to the paper so as to allow of the substitution of other writing in its stead, without leaving any trace of alteration. But the evidence came far short of establishing the proposition. In the absence of the deed itself (as was the case in the last trial) the evidence adduced by the defendant would be strong to show the grantee in the deed was Emanuel J. Meyers. But how can it prevail against the evidence of the deed itself? Manifestly it is not altered. I do not hesitate to say so for myself. The fact, however, is for you, and I submit it to you.] " (Fourteenth assignment of error.)

Verdict for the plaintiff, and judgment thereon. The defendants took this writ of error, assigning for error, the ruling of the court on the question of evidence, above particularly noted, the portions of the charge above included within brackets, and the omission of the wife to join her husband as co-plaintiff in the action.

*Valentine Hay* ( *W. H. Koontz* and *H. S. Endsley* with him), for the plaintiffs in error.—The sale in partition having been made to the husband, and so returned to, and confirmed by the Orphans' Court, and he having taken possession, and exercised all acts of ownership, and contracted the debt to the defendant on the faith of such ownership, the fact that a deed was subsequently recorded in the name of the wife, cannot withdraw the property from the husband's creditors in favor of the wife. If she, as she alleges, made her husband her agent, she is bound by his acts. There was no proof that the name of the wife,

[Feig *v.* Meyers.]

which was inserted in the deed, in a different handwriting from the body of the instrument was so inserted with the knowledge or consent of the grantors, and the presumption is otherwise, as they had returned the property as sold to the husband ; the deed was therefore improperly admitted in evidence. The deed was not made, as the court charged, " in pursuance of the sale," for it contradicted the record of the sale, which showed that the husband was the purchaser.

The attempted proof that the wife obtained sufficient money from her father to pay for the property, was deficient. Evidence of her subsequent declarations that a package which her father threw into her lap contained $500 in money was improperly admitted : Keeney *v.* Good, 9 Har. 349 ; Aurand *v.* Schaffer, 7 Wr. 365 ; Jones *v.* Maffet, 5 S. & R. 534.

*H. L. Baer*, (with him *Coffroth & Ruppel*), for the defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court, December 30th 1882.

The plaintiff alleges, that at her suggestion, her husband purchased the land for her, and that she furnished the money for all the payments that were made. For the present this question is settled by the verdict. The testimony touching it was submitted under fitting instructions, the first of which was,—" She must show that the property was bought for her ; that she had the means to buy with ; and that she applied those means in payment of the purchase money. And this she must show by evidence at once clear and so full and satisfactory, that the jury can rely on it with reasonable certainty." Taking her allegation as true, the title vested in her by a resulting trust, even if the deed was made to her husband. The owner of land is not estopped from setting up his title against judgment creditors, though they had no actual or constructive notice of his title at the time they gave credit or filed the judgments against the occupant. A married woman is not bound to record her deed under pain of losing her land if seized by her husband's creditors. The defendant's third, eighth and tenth points were rightly refused.

Nor is there error in the answer to the fifth point, for it adapted the proposition to the evidence before the jury. The court was not bound to affirm or deny the proposition that if the wife purchases land and pays for it with her own money and has the deed made to her husband, there is no resulting trust. It did not arise upon the evidence. And the learned judge may have believed that husband and wife are unequal in power and influence over each other, and that when he claims her property has been vested in him, it ought to appear in the

[*Feig v. Meyers.*]

circumstances that it was done without undue influence on his part.

Nothing on the face of the deed authorized its rejection as evidence. If it was not all written by the same hand, in the absence of erasure or interlineation, the presumption is, that it was all written before sealing. The burden was on the defendants to show that the alleged alteration was subsequent to delivery of the deed. If the record of the Orphans' Court failed to show authority in the trustees to make the deed to Rebecca C. Meyers, and for that reason it did not operate as a conveyance to her, it was pertinent testimony, with other testimony, to establish the alleged resulting trust. There is no evidence that the deed appears to have been altered, or that the signatures were forged; but there is testimony that the signatures are genuine, and no appearance of erasure on the face of the deed. The testimony of Dennis Meyers by no means warrants submission to the jury to find that any words had been taken out and others inserted instead. The seventh, eleventh, twelfth, thirteenth and fourteenth assignments are not sustained.

It was competent to prove that E. J. Meyers bought the property for his wife, and the testimony constituting the fifth and sixth assignments goes no further. It was confined to the request of the wife to purchase; and to his statement made immediately after the sale, that he had purchased for her.

Evidence of the declarations of a party in possession, in some circumstances, is admissible in his own behalf to show how he claimed, or the extent of his claim; but not to show that he had paid for the property, or that it had been vested in him by deed or otherwise. The offer set out in the eighth assignment was to prove possession and claim of ownership of the property; but testimony was afterwards received that the plaintiff said her money paid for it. In the argument this was treated as if received under the offer, for which reason we note the assignment. The evidence of her declaration respecting payment of money is not within the exception.

It was material for the plaintiff to establish the fact that she had money to make the payments for the property in addition to the sums she had loaned. After Charles Shank had testified that the plaintiff's father came to her house the evening before Christmas and " handed over to her a Christmas gift—a roll of something—looked like a roll of money," he was allowed to say that on the next morning, "she said the Christmas gift her father had given her was $500." No authority has been cited which allows a party to make out a case in that way. Were it permitted a party to prove such declarations, he could readily prepare a multitude of witnesses. We are of opinion that it was

[Susquehanna Mut. Fire Ins. Co. *v.* Swank.]

error to admit the offer set out in the ninth assignment, and for that the judgment must be reversed.

The only remaining assignment that will be remarked is the tenth. It does not appear by the record, as printed, that the defendants objected to the trial or taking the verdict because of the non-joinder of the plaintiff's husband. Section 39 of the Act of 1850, P. L. 571, provides that for recovery of any property secured to a married woman by the Act of 1848, suit may be brought in the names of herself and her husband, to her use; and section 2 of the Act of 1856, P. L. 315, enables her to bring suit alone, if her husband has deserted her or separated himself from her, or neglected or refused to support her, or she has been divorced from his bed and board. Had the defendants objected, doubtless, the court would have heard them. The plaintiff had right to move to amend, and still has that right, and would be allowed to do so in this court under the circumstances, if the cause were not reversed on another ground.

Judgment reversed and venire facias de novo awarded.