F. R. & J. G. WALKER, *contra.*

91　57<br>117　791

## JAFFRAY *et al. v.* BROWN.

Where in a claim case the creditor shows that the land upon which his execution is levied belonged to the debtor at the time the debt was contracted, and that subsequently the deed under which the debtor held was cancelled on account of an informality and a new deed made by the grantor to the debtor's wife at his instance and without any additional consideration, the debtor being then insolvent, and it further appearing that there had been long and continuous litigation between the creditor and the debtor about the debt and the land, and that pending the litigation and a short time before final judgment against the debtor, his wife made a deed conveying the land to the claimant, who had notice of the litigation and of trouble about the land, the creditor (plaintiff in *fi. fa.*) makes out a *prima facie* case which would authorize him to subject the property, although it appears from the testimony that the debtor, before he obtained his deed, had conveyed the land to his wife's relations, it also appearing that his deed to them had never been delivered. There was evidence to go to the jury tending to show that the claimant claimed under the debtor's wife by virtue of the deed from her above referred to.

2. Possession in the debtor could not be proved by his declaration that he was in possession of the premises and had conducted farming operations upon it, there being no other evidence to show that he had any possession at the time of making the declarations.

October 24, 1892.　　　　　　　　　　　　　*Judgment reversed.*

Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1892.

A *fi. fa.* in favor of Jaffray & Company against Purtell & Carroll, a firm composed of E. C. Purtell and M. C. Carroll, based on a judgment dated June 15, 1880, was levied, September 16, 1881, on a tract of land in Fulton county as the property of Purtell, which was claimed by Brown. Jaffray having died, the cause proceeded in the name of the surviving partners of his

firm. After testimony had been introduced by plaintiffs, the claimant moved that the levy be dismissed upon the ground that plaintiffs had not shifted the burden and had no case in law, plaintiffs having taken the burden of proof, as none of defendants in *fi. fa.* were in possession at the time of the levy. The motion was sustained, and the plaintiffs excepted to this ruling, and to the exclusion of evidence hereafter mentioned.

Plaintiffs introduced the execution and levy. Also, a power of attorney from William Gabbett to W. M. Isom, authorizing Isom to sell and convey any property belonging to Gabbett, dated January 14, 1873. This power of attorney stated that Gabbett was of the State of Arkansas, and Isom of Fulton county, Georgia. It did not state the place of execution. It was attested by two unofficial witnesses, and was recorded in the clerk's office of Fulton superior court, November 2, 1875. Also, a deed by Isom as attorney in fact for Gabbett, to Purtell, for the premises levied upon, dated October 20, 1875, regularly attested and recorded November 2, 1875. Also, a deed made by Isom as attorney in fact for Gabbett, for the property levied upon, to Mrs. Purtell, dated January 31, 1877, and recorded April 13, 1877, under a regular power of attorney dated July 5, 1877. Isom testified: I executed the deed of October 20, 1875, as attorney in fact for Gabbett, to Purtell, under the power of attorney dated January 14, 1873. The consideration for this deed was $600, part of which was paid by Purtell making me a deed to some property on Smith street in Atlanta, and part, $100, to be paid in money. (The deed to the Smith street lot was introduced by plaintiffs. It was dated September 2, 1874. It was shown that Purtell obtained title to this lot from W. H. Howard on October 20, 1873, in consideration of $475.) Purtell paid it along in "dribs," making me an overcoat for $30.

Mrs. Purtell did not pay me any money at all. According to my best recollection, she had no money present at the time the deed was signed, nor did she pay me any. Purtell negotiated the trade. Gabbett was my brother-in-law, and when I sold the farm to Purtell. I paid Gabbett. The deed by me as attorney in fact to Mrs. Purtell came about this way: Purtell told me the first deed I made was not right some time after that, about a year I suppose, or more; and I told him if it was not I would make it right with him, that I would do what was right about it, and he got me to make this other deed. I did not think it was anything to me, and I made him this second deed in the name of his wife. No new consideration passed between me and him or any one for it, but it was based on exactly the same consideration for which the first deed was executed. Mrs. Purtell may have come to Angier's office when Purtell and I were there at the execution of the first deed. If she paid a cent I do not recollect it, but will not swear positively that I did not get any money from her. I do not think there was anything .paid at the time, though there might have been. Purtell said the property was his. I took the deed to the Smith street property in my own name, and when I sold the farm to Purtell I paid Gabbett.—Angier testified: Am an attorney at law, and drew the deed from Isom to Purtell, representing Purtell and drawing it according to his instructions. Knew nothing about the consideration. Think something was said about Purtell or Carroll going to New York soon to buy goods, but cannot state positively. Mrs. Purtell was present a good deal of the time and undertook to have the deed made directly to her. Purtell requested I should do nothing until after she left; he was very anxious the deed should be made to him, and after she left it was prepared and executed that way; he did not want it

made to her. Purtell and his wife "jowered" over it all day long, and she broke up the execution of the deed once or twice. She claimed the money paid for the property was hers, and Purtell claimed it was not. She came back and I told her I had drawn the deed in the name of her husband, and she made some allusion to her money having paid for it. She put Isom, Purtell and me on notice that it was her property, and her husband contended it was his, and representing him I drew the deed according to his instructions. He said he was beginning business and wanted to strengthen his credit. I do not remember whether any money was paid in my presence. She may have had some money, but I do not remember whether it was paid there or not. Isom was present once or twice when she came and said her money had paid for the property. She was earnest and insisted that her money paid for the farm. Purtell seemed to want to avoid the discussion when she was present. It was after she left that he said he was beginning business and wanted to strengthen his credit. —Carroll, one of defendants, testified: Went to New York to buy goods for our firm. Called on plaintiffs and bought the goods, part of which were paid for, leaving a balance still due. When in New York I told them we were just about to start business and did not have much money; that I had nothing in the way of property, but my partner had some real estate, but I mentioned nothing about the farm. Our business in Atlanta wound up in a rather mysterious way. Mr. Purtell took the goods and sold them it seems, removing them sometime in the night after business hours, without my knowledge. Purtell & Carroll owed something in the neighborhood of $200 besides the Jaffray debt.—The claimant testified for plaintiffs: When I took a deed from Mrs. Purtell to the property in dispute, I did not take a written obligation from her to

hold me harmless against the Jaffray claim, but only had a verbal understanding that I was to give her good property and she was to give me good property. She never mentioned she would protect me against this suit. Of course she was to do so; the deed shows that. I had an idea there was trouble. I went into possession in 1879, and have been in possession ever since.—One Gaines testified: Mrs. Purtell is a sister to William A. and Mary M. Crawford, who are brother and sister. Purtell is dead. I have known Mrs. Purtell since 1864. She never had any money or separate estate of her own along in those times, and I never knew of her having anything of her own before 1875. I am her brother-in-law. She kept a boarding house, first keeping it along in 1875 or 1876, and I think she ran it in her own name.—Gabbett testified: I executed the power of attorney first mentioned. It was executed in Arkansas; the persons whose names appear as attesting witnesses signed their names as witnesses, and it was sent to Isom, a resident of Fulton county, Georgia. I do not know to whom Isom sold the property. He sent me the money for it, but I do not know whose money was used in paying me, nor who paid him for it. I have made no deed to Mrs. Purtell for the property.—Plaintiffs also introduced a copy deed from Purtell to William A. and Mary M. Crawford for the property levied on, dated October 21, 1874, but never recorded. It was a regular warranty deed. On a former trial of the claim case in which Mrs. Purtell was claimant, which was before she sold to Brown, on notice from plaintiffs she produced the foregoing deed and counsel for plaintiffs made a copy of it, and upon this trial claimant's counsel, who had also been her counsel on the former claim case, stated that the deed had been lost; and the copy was admitted without objection. Plaintiffs also introduced the tax digest of Fulton county for 1874, showing

a return by Purtell of city realty $850, and some house-hold furniture; also for 1875, showing a return of city realty $700, money and solvent debts $400, and furni-ture; also for 1876, showing no return of property by him.

Plaintiffs offered to prove by Gaines that he knew of the property levied upon and that subsequent to the making of the deed by Isom, attorney in fact for Gab-bett, dated October 20, 1875, Purtell told him that he was in possession of the property levied upon and had conducted farming operations upon it for one or more years. This evidence the court ruled was not ad-missible.

FRANK A. ARNOLD, for plaintiffs.

W. I. HEYWARD and WEIL & GOODWIN, for claimant.