DOZIER *et al.* v. McWHORTER, and *vice versa.*

1. Prima facie a judgment in favor of E. J. D., executor of M. G., is his individual property, but this presumption may be removed by slight evidence tending to show that he holds the same in trust for the estate.

2. Evidence that the note on which the judgment issued was the property of the estate shifts the burden; and unless the same is met by a counter-showing, the jury may find that the beneficial ownership of the fi. fa. issued on such judgment is in the estate.

3. Where the executor acknowledged an indebtedness of $11,000 to the estate, and in consideration thereof conveyed certain land to legatees, one of whom was his wife, and the others his minor children, and no reference was therein made to the note, and suit thereon was thereafter brought by E. J. D., executor of M. G., and no returns or other evidence introduced to connect the deed and execution, or to rebut the conclusion arising from the proof of the estate's ownership of the note, a verdict finding that the execution was not the individual property of E. J. D. was supported by the evidence.

4. Sayings of the deceased, in which he claimed to own the fi. fa., were properly excluded; for while declarations of one as to his own title are admissible to show adverse possession, they are not competent to establish ownership.

5. Where ownership is once shown to be in an estate, the executor can not acquire title by adverse holding.

6. The verdict not being general, but in answer to questions propounded to the jury by the court, as to the sufficiency of which there was no complaint,

grounds of the motion for a new trial not predicated upon matters affecting such answers are necessarily without merit. Civil Code, § 4849.

7. The right to the attorney's lien, and the effect and extent thereof, were not covered by the verdict found ; and there being no contention that the amount of the fee was too small, or contrary to evidence, the judgment is affirmed.

Argued June 5,—Decided June 26, 1903.

Levy and claim. Before Judge Foster. Greene superior court. December 31, 1902.

*John C. Reed* and *John F. Methvin*, for plaintiffs.

*Salem Dutcher, Samuel H. Sibley*, and *James Davison*, contra.

LAMAR, J. This is a claim case in which the title to the land is not so much involved as the ownership of a fi. fa. issued on a judgment in favor of " E. J. Dozier, executor of Mary Gibson," against Wilson & Company. On account of the bankruptcy of the defendants in fi. fa. and a homestead over all the land involved, the levy was long delayed; and believing that the judgment was barred, McWhorter bought the property. When the levy was made he filed a claim, insisting, among other things, that the judgment was dormant. But this court having held, in *Dozier* v. *McWhorter*, 113 *Ga.* 584, that the statute was suspended, and that the lien of the execution could be asserted, McWhorter paid $2,500 for a relinquishment of the lien by the legatees of Mary Gibson, whom he supposed to be the beneficial owners of the execution. John A. Dozier, temporary administrator of E. J. Dozier, continued to prosecute the levy, and Columbus Heard, Esq., who had obtained the judgment on which the fi. fa. issued, also asserted his lien for attorney's fees. The usual brief, statutory pleading in a claim case was, by amendments covering a hundred pages of the record, converted into a bill in equity, raising questions as to whether E. J. Dozier at the time of his death was still indebted to the estate, whether the fi. fa. or its proceeds belonged to the estate of Mary Gibson, and whether John A. Dozier, as an heir of E. J. Dozier, was not estopped from claiming the fi. fa. as temporary administrator, because he had participated in the relinquishment of the lien thereof on McWhorter's land. Many orders, making and striking parties and allowing amendments, were made ; but the case was finally submitted to the jury on questions framed by the court, requiring them to answer to whom the fi. fa. belonged, and what was due Judge Heard as his fee. The verdict was in favor of the claimant,

under which the levy was dismissed. From the record it appears that Mary Gibson appointed her son-in-law, E. J. Dozier, as her executor, and left the bulk of her property to her daughter, his wife, Ophelia Dozier, for life, with remainder to her children, from whom McWhorter secured a relinquishment of the lien of the fi. fa. which is the basis of the proceedings in this case. On the 4th of January, 1874, Wilson & Company made their note for $4,794 to the order of Dozier & Walton. This was indorsed to "E. J. Dozier, exer. &c., or order." Suit was brought on this note by "E. J. Dozier, executor of Mary Gibson," to the March term, 1876, of Greene superior court, and judgment obtained that plaintiff recover of the defendants. On February 12, 1874, E. J. Dozier acknowledged an indebtedness of $11,538 to the estate of Mary Gibson, and in consideration thereof conveyed to his wife for life, with remainder to her children, 1,700 acres of land in Columbia county. John A. Dozier, temporary administrator of E. J. Dozier, was his son by a former marriage, and insisted that this deed was in satisfaction of all indebtedness due by E. J. Dozier as executor, and that the execution in controversy belonged to the individual estate of E. J. Dozier; that if Mary Gibson's estate ever had any interest in the note or judgment, it was satisfied when this deed was made. The claimant denied this; and insisted that the land, or at least most of it, was already the property of Mary Gibson's estate; that the deed in 1874 was made long before the suit was filed in 1876 by "E. J. Dozier, executor of Mary Gibson," at which time her estate owned the note. Neither side introduced any returns of E. J. Dozier as executor; and in the argument here the main contention was as to whether the words "executor of Mary Gibson" in the petition were descriptio personæ, or were to be treated as an admission that the judgment thereon belonged to her estate; and also as to the admissibility and effect of declarations by E. J. Dozier that the fi. fa. belonged to him individually.

Prima facie the judgment and execution in favor of "E. J. Dozier, executor of Mary Gibson," was his individual property. *Marshall v. Charland,* 109 *Ga.* 308; *Wynn v. Irvine,* 109 *Ga.* 288; *Kenan v. DuBignon,* 46 *Ga.* 261; Civil Code, § 2998. This principle is so well established as to have become a rule of property, and must be followed, even though it is "arbitrary" and the reasons assigned are not "satisfactory." *Daniel v. Hollingshead,* 16 *Ga.* 190. Truth

is so consistent with herself that every technical rule which arbitrarily construes an act contrary to the real intent of the parties will cause a perpetual struggle to get away from the technicality to the fact; and such has been the history of the rule as to descriptio personæ. A deed signed " A, executor of B," will convey the title of the estate. Where the maker of a note signs his name " executor," " administrator," or "trustee," he can not relieve himself of his individual liability and impose the debt on the estate. The converse is only literally true, and the courts will readily lay hold of any fact to show that a paper payable to " A, executor, administrator, or trustee," is not his individual property. Prima facie it is; but where third persons attempt to trace funds, or to show that the holder of a paper thus payable had notice of its trust character, these words, instead of being ignored and treated as mere surplusage or descriptive merely of the person, are given full force and effect as imparting notice. And so, too, when the beneficiaries proceed against the payee so described, in an equitable proceeding like this, where the proceeds as well as the fi. fa. itself are involved (*Saffold* v. *Banks*, 69 *Ga.* 294; *Fla. C. R. Co.* v. *Usina*, 111 *Ga.* 698, 699), these words go far to establish the fact that the paper is held in his representative capacity. Swan *v.* Produce Bank, 24 Hun, 277; Smith *v.* Burgess, 133 Mass. 511; Jandon *v.* National Bank, 8 Blatch. 430 ; Duncan *v.* Jandon, 15 Wall. 165 ; Shaw *v.* Spencer, 100 Mass. 382. Applying this rule, the execution on its face was the individual property of E. J. Dozier, requiring very little to overcome this technical presumption as to who was the beneficial owner of the proceeds. Wilson, who signed the note on which the judgment issued, testified that his firm was indebted to Dozier & Walton, of which latter firm E. J. Dozier was a member, and that when Dozier came to Bairdstown, where Wilson lived, to collect what Wilson & Company owed, " I said to him [Dozier], ' I suppose you have come after the money we owe you?' He said, ' No, I haven't got any use for it; it is Mrs. Gibson's money; she didn't want it; she wanted only the interest on it.' I asked him who Mrs. Gibson was, and he said his mother-in-law. I do not know whether Mrs. Gibson was living then or not." There was no evidence tending even remotely to contradict this testimony of Wilson. On the contrary, the theory of the temporary administrator of E. J. Dozier seemed to recognize that this note, afterwards in-

dorsed to "E. J. Dozier, exer. &c., or order," by Dozier & Walton, was an asset of the estate of Mary Gibson; but it was earnestly contended that the deed dated February 12, 1874, shortly after the execution of this note, satisfied all of E. J. Dozier's indebtedness to the estate of Mary Gibson. It does not appear whether this deed was made before or after the indorsement to "E. J. Dozier, exer. &c." It was made two years before suit was instituted on the note by "E. J. Dozier, executor of the estate of Mary Gibson." *That deed was made to Ophelia Dozier for life, with remainder to her children, who were then minors, but she was not produced to explain whether it was intended to satisfy any liability represented by the note; and her silence and the silence of her sons, and their supposition and understanding that the execution belonged to E. J. Dozier individually, were not binding on the administrator with the will annexed of Mary Gibson, asserting a title to this execution against the claim of John A. Dozier, temporary administrator of E. J. Dozier.

This, therefore, brings us to the consideration of the controlling point in the case, and the one mainly insisted on here as ground for the grant of a new trial. Error is assigned because the court refused to permit the defendant to prove by Thomas B. Dozier that after his father had made the deed to 1,700 acres of land, he heard him say a great many times that the fi. fa. was his individual property; that he heard him say this just two days before his death, and thought W. W. Dozier was present. Movants also offered to prove by John A. Dozier that he had heard his father talk about the fi. fa. several times, and he always said that the fi. fa. was his; and further offered to prove by Columbus Heard that in a conversation in 1896, about fees, E. J. Dozier told him that the fi. fa. belonged to himself, and not to the estate of Mary Gibson; that he had settled with said estate in full. The evidence of these several witnesses was excluded on the ground that it was hearsay, and, as declarations by E. J. Dozier in his own favor as to ownership, was not admissible. Self-serving declarations are not admissible unless made in the presence of the opposite party, or as part of the res gestae, and for the reason that a party can not thus make evidence in his own favor. Admissions against his interest may be shown, on the theory that the opponent may fairly treat as true what the other party says against his personal or property rights.

And the declarations of a deceased person against his interest may likewise be shown. So, too, declarations by one in possession of property, in disparagement of his title thereto, may always be shown; and declarations in favor of his own title are admissible to prove adverse possession. According to many authorities, possession being a continuing act, declarations accompanying the fact of possession by one in possession, and explanatory thereof, are treated as part of the res gestæ to show in what capacity he holds — whether in his own right or in subordination to some one else. So, too, declarations by one in possession, as to boundaries, are admissible as showing the quantity of the land adversely held by him. According to Hunnicutt v. Peyton, 102 U. S. 363, they are receivable only as part of the res gestæ, and when made at the time of pointing out the boundary. According to many authorities, declarations as to adverse possession can only be made when the party is in possession, and accompanying some act which is needed to give the statement probative value. Such declarations must relate solely to the question of possession, and not the title. Allen v. Prater, 30 Ala. 460; Morgan v. Larned, 10 Met. (Mass.) 50. Declarations as to where the money came from with which the land was bought are not admissible. Feig v. Myers, 102 Pa. 10. They are not evidence of the title actually held; and where the issue is, not what was the nature of the possession, nor what was the title claimed, but which party, plaintiff or defendant, was the actual owner, such declarations are not admissible. Stone v. O'Brien, 7 Colo. 460.

And the same distinction seems to have been recognized by this court. Declarations by one out of possession are not admissible. *Parrott* v. *Baker*, 82 *Ga.* 364. Declarations are admissible only to characterize the possession otherwise proved. *Walker* v. *Hughes*, 90 *Ga.* 52. And possession itself can not be proved by a declaration of the defendant that he was in possession, and had conducted farming operations on the land, there being no other evidence to show that he had any possession at the time of making the declaration. *Jaffray* v. *Brown*, 91 *Ga.* 57. Nor are they "admissible to show title." *Ozmore* v. *Hood*, 53 *Ga.* 118. Most of the cases in our books relate to the adverse possession of land. *Smith* v. *Haire*, 58 *Ga.* 446, strongly relied on by the plaintiff in error, was such a case; for while there title to cotton was in controversy, the ownership depended upon the ownership of the land as to

which the declarations of adverse possession were admitted. E. J. Dozier was not in the physical possession of the fi. fa. at the time the statements were made; the declarations did not accompany any act, but appeared to have been an assertion of title rather than declarations seeking to show adverse possession. Even if they were admissible to show possession, they were not admissible to prove title, and, had they been admitted, would not have been sufficient to rebut the ownership in the estate of Mary Gibson. The limitation of the rule allowing declarations in any case would be particularly applicable to a controversy between the beneficiaries and the executor. When once the title is shown to have existed in the estate, it can only be divested by showing a compliance with the rules and forms of law. He can not acquire title by holding adversely to the estate. Civil Code, § 5153. Possession can be as readily referred to him in his representative as in his individual capacity. And had Dozier been present in court and testified that the fi. fa. belonged to him, it would have been necessary to go further, in order to meet the claimant's evidence, and show more than possession, and more than a claim of title. How had the interest of the estate been lost? The plaintiff in fi. fa. insists that it was lost in the settlement in February, 1874, but the deed is silent, and there are no witnesses to show that the note was part of the consideration for that land; and it is only sought inferentially to connect the two transactions. If such was the fact, it was the misfortune of Dozier that he had not made his returns as required by law. Three of the beneficiaries named in that deed were minors, without opportunity to be heard as to the value of the land at the time the deed was made, or as to whether it was sufficient to discharge the admitted indebtedness, or whether all or only a part of the property belonged to him. Having prima facie shown that the execution belonged to the estate, the burden was upon the executor to show that that title no longer existed. Declarations of possession, declarations that the executor was claiming it and holding it as his own, would only have proved possession of the fi. fa. and not the title, and the evidence could not legally have changed the finding of the jury.

It is not necessary to consider in detail each of the twenty-three grounds of the motion for new trial. The excluded testimony is not set out in numbers 13, 18, 9, except by reference to the brief of

evidence. The exceptions contained in numbers 4, 5, and 6 are included in the general assignment that the verdict is contrary to law. The 7th ground as to the loss of the attorney's lien relates rather to the effect of the verdict, and the proper decree thereon, than to the correctness of the jury's finding. The execution of the papers signed by E. J. Dozier, and that by E. T. Williams as to fees, were not properly proved, and at most could only have amounted to declarations, the effect of which has already been considered under another head. The exclusion or admission of evidence as to E. J. Dozier's ownership of land in Columbia county would not authorize the grant of a new trial. If the deed of February, 1874, was, with proper parties, intended as a final settlement of his account as executor, or intended to give him title to the note and fi. fa., that effect would not be destroyed, even if title to all the land was defective. He claimed it, and his quitclaim would have been sufficient consideration to support the transaction until, by proper proceedings for rescission, reformation, or cancellation, or suit on the warranty, the parties of the second part had complained that he had conveyed to them their own property. The evidence as to the character of E. J. Dozier was clearly inadmissible.

*Judgment on the main bill affirmed; cross-bill dismissed. All the Justices concur.*