### IRBY vs. LIVINGSTON *et al.*

When the comptroller-general issued execution against a defaulting tax-collector and his sureties, for money due the State for taxes collected and not paid over, such sureties had the right to pay off said execution, or the balance due thereon, and to control the same as against the property of their principal, or property which he owned at the time of the execution of his bond. When such sureties paid off the execution and took control of the same, they were subrogated to the rights of the State, and became entitled to the same lien that the State had on all the property of the principal at the time he gave the bond.

May 16, 1888.

Tax. Executions. Transfer. Principal and surety. Liens. Subrogation. Before Judge BOYNTON. Newton superior court. September term, 1887.

Reported in the decision.

E. F. EDWARDS and HALL & HAMMOND, for plaintiff in error.

J. M. PACE and J. G. LESTER, *contra.*

BLANDFORD, Justice.

It appears from the record that one Langley, as tax-collector of the county of Newton, gave bond, with the defendants in error as his sureties, for the faithful discharge of his duties and the payment of the taxes collected by him. He afterwards made default, and the comptroller-general issued an execution against him and the sureties on his bond for the money he was due the

State for taxes collected by him and not paid over.    The defendants in error, as his sureties, paid off this execution, and had it levied upon a certain tract of land; to which Mrs. Irby, the plaintiff in error, thereupon interposed a claim.    It appears that this lot of land had been the property of Langley, and after the execution of the bond above referred to, was sold and conveyed by him, and afterwards, by proper conveyance, passed into the hands of Mrs. Irby, the claimant.    The case was left to the decision of the court without the intervention of a jury, and the court adjudged that the property was subject; and Mrs. Irby thereupon excepted.    The question here is, whether this property is subject, under the facts stated.

The code, §913, provides, that "the property of collectors, receivers and of their sureties is bound, from the execution of their bonds, for the payment of taxes collected and the discharge of their duties."    Counsel for the plaintiff in error contend that the rights of the State under the execution did not pass to the sureties when they paid off the execution; that the sureties were not subrogated to the rights of the State, under section 2167 of the code.    That section is as follows: "Any surety  .  .  who shall have paid off or discharged the judgment or execution in whole or in part, and shall have the fact of such payment by him entered on such execution by the plaintiff or his attorney, or the collecting officer, shall have the control of such execution, and the judgment upon which it is founded, to the same extent as if he was the original plaintiff therein, and be subrogated to all the rights of such plaintiff, for the purpose of reimbursing himself from his principal."

Counsel for the plaintiff in error contend that this section of the code, which, they say, was codified from various acts of the legislature, means that where the

sureties have paid off an execution founded on the judgment of a court, they may control the execution to reimburse themselves; but that where the execution is not founded on the judgment of a court, no authority is given them to control the execution for the purpose of reimbursing themselves. This argument is not without some show of reason; but we think there are other sections of the code that control this case.

The doctrine of subrogation was originally a doctrine in equity; and the subject is fully treated of in the case of Dering *vs.* Earl of Winchelsea, 1 White & Tudor's Leading Cases in Equity, 120. Finally, the courts of common law took hold of it and allowed actions to be brought for contribution. The legislature of this State dealt with the subject in various acts, and the codifiers afterwards placed it in its present shape, covering every phase of the matter and rendering further legislation on this subject unnecessary. Section 2176 of the code provides that " a surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor, and in a controversy with other creditors ranks in dignity the same as the creditor whose claim he paid." Under section 2177, " he is entitled also to be substituted in place of the creditor as to all securities held by him for the payment of the debt." Nothing more than this need be said. This is code law; it is not codified from any act of the legislature. The compilers have referred to the acts of 1847, p. 111, but there is no act of 1847 on this subject, and it was their intention, I suppose, to refer to the act of 1857; but these sections are not codified from that act. They are independent of the acts of the legislature. These sections provide that the surety who has paid the debt is subrogated to the rights of the creditor, and is entitled to be substituted in the place of the creditor as to all se-

curities held by him for the payment of the debt; and
one of the securities which the State held for the pay-
ment of this debt, was a lien upon all the property of
the principal at the time he gave this bond.   We think
that when these sureties paid off this debt to the State,
they were subrogated to the right of the State as to this
security—the lien upon all the property of this tax-col-
lector at the time he gave the bond.   It passed to them,
under these sections of the code.

The case of *White vs. The State*, 51 *Ga.* 252, referred
to by counsel for the plaintiff in error, does not apply
to this case.   That decision was to the effect that, while
there could be no judicial interference with the State
when seeking to collect its taxes by virtue of an execu-
tion, yet where the execution had passed into the hands
of the tax-collector, who had settled with the State and
paid over the amount sought to be collected from the
delinquent tax-payer (the defendant in execution), the
tax-collector stood simply in the position of a citizen,
and the defendant might resist the execution by judicial
interference.

We think that the case of *Livingston et al. vs. Ander-
son*, decided at the last term of this court, (80 *Ga.* 175,)
is in point in this case.   It is in effect what we now de-
cide.   In that case this court held that, inasmuch as no
writ of execution had been issued against the tax-payer
who was in default, the sureties of the tax-collector
(who had been compelled to make good the default of
the collector in not collecting and paying over these
taxes) could not compel the State or its officers to issue
execution for the use of the sureties entitled to reim-
bursement; but that the sureties could obtain relief in
equity against the defaulting tax-payer.   The right of
subrogation does not apply as to the remedies which the
State has against the citizen, but as to the security which

the State has; that security passes to the citizen or to the surety who pays off a debt under such circumstances as these; and for the purpose of reimbursing himself, he has a right to enforce the execution issued by the State.

As Mrs. Irby bought this property of the defaulting tax-collector after this bond was given and after the lien had attached to the property, she took the property subject to the lien, and subject to the right of these sureties to have the property levied on and sold for the purpose of reimbursing themselves. They stood in the shoes of the State as to this matter; and we think, therefore, that the court below was right in holding as it did; and the judgment is affirmed.