EVERETT ET ALS. v. STATON, RECEIVER.

(Filed 29 September, 1926.)

**1. Banks and Banking—Directors—Officers — Guarantor of Payment— Equity—Subrogation.**

The directors of a bank who have individually guaranteed the indebtedness of the bank held by another or foreign bank, to be entitled to legal subrogation to the excess collaterals held by the creditor bank as security, must show a payment of such indebtedness or a part thereof, and claim only to the extent such payment has been made.

**2. Same—Conventional Subrogation.**

And to be entitled to conventional subrogation, they must show an agreement, duly passed and binding upon the bank, fairly made, and not tainted by fraud, bad faith or undue advantage, that the excess securities held by the creditor bank should inure to their benefit as guarantors if they would be in excess of the indebtedness they had guaranteed.

**3. Same—Corporations—Meetings—Corporate Action.**

In order for the directors of the bank to have by equitable conventional subrogation an interest in the surplus collateral of a creditor bank who held their individual guaranty for the payment by the debtor bank, they must show a corporate action by resolution duly passed giving them this right by which they have acquired a lien upon such surplus collateral to protect them in their guaranty.

**4. Same—Evidence.**

The mere fact that the president or other officials of the debtor bank understood that the individual directors who should give their personal written guaranty to the creditor bank would be protected by the collaterals

of the debtor bank pledged to the payment of the debt so guaranteed, and that the individual directors so understood it, does not alone amount to such corporate assignment of the collaterals as would entitle the guarantors to conventional subrogation thereof.

**5. Same—Record of Meeting.**

As to whether it is necessary for a record of a meeting of the board of directors of a bank to be kept wherein a conventional assignment was given to its directors guaranteeing its obligations to another bank, in the collateral thereto hypothecated by the debtor bank (3 C. S., 221(b). *Quære?*

CIVIL ACTION before *Calvert, J.,* at March Term, 1926, of MARTIN.

The Peoples Bank of Williamston was indebted to twelve banks in various amounts, aggregating $389,069.74. This indebtedness of the Peoples Bank was secured by collateral owned by the bank in the form of bills receivable, aggregating $624,431.16. These correspondent banks refused to advance any more money until further security or guaranty was assured. Plaintiffs, among others, were directors of the Peoples Bank. In order to meet the emergency twenty-one directors of the Peoples Bank executed and delivered a written guaranty to each of said correspondent banks, guaranteeing to each of said banks payment of any indebtedness held by such bank against the Peoples Bank, together with any indebtedness which might thereafter exist or arise by reason of any credit furnished or extended to said Peoples Bank. These guaranties authorized the creditor banks in their discretion "from time to time at any time surrender, exchange or substitute at its pleasure any collateral that it now holds or may from time to time hold as security for such indebtedness or any part thereof."

Thereafter, the Peoples Bank became insolvent and the defendant Staton was appointed receiver thereof.

Eight of the creditor banks have been paid in full by the receiver of the Peoples Bank, and the excess collateral which these eight creditor banks held, belonging to the Peoples Bank, has been returned to the receiver. The other four creditor banks have not been paid, the amount due them being $38,330.64, and they have brought suit on the guaranties. The plaintiffs contend that it was agreed at the time of signing said guaranties by said directors that all the collateral owned by the Peoples Bank and in possession of creditor banks should be exhausted before the guarantors should become liable on said guaranties, and that by reason of such agreement the collateral returned to the receiver of the Peoples Bank by the eight creditor banks belongs to the plaintiffs as directors, and should be held for the purpose of indemnifying them against loss arising upon claims of the four creditor banks still holding unpaid claims against the Peoples Bank.

The defendant contends that this excess collateral does not belong to the plaintiffs or the directors of said bank personally, but that it belongs to the general fund of the bank with which to pay depositors and other creditors.

At the conclusion of plaintiffs' evidence the trial judge nonsuited the plaintiffs, from which judgment plaintiffs appealed.

*Stubbs & Stubbs, B. A. Critcher, and Ward & Grimes for plaintiffs.*
*Dunning & Moore and Stephen C. Bragaw for defendant.*

BROGDEN, J. The question presented by the record is whether or not the plaintiffs are entitled to the excess collateral now in the hands of defendant receiver by virtue of the equity of subrogation.

Subrogation is of two kinds, to wit, legal and conventional. "Legal subrogation is based upon payment and exists where one who has an interest to protect or is secondarily liable makes payment, while conventional subrogation, so named from the convention or agreement of the civil law, is founded upon the agreement of the parties, which really amounts to an equitable assignment." *Joyner v. Reflector Co.,* 176 N. C., 274; *Bank v. Bank,* 158 N. C., 250; *Publishing Co. v. Barber,* 165 N. C., 488.

The basis of legal subrogation is payment either in full or *pro tanto* to the creditor or otherwise satisfying the creditor so that the creditor has nothing further to demand. *Publishing Co. v. Barber,* 165 N. C., 488; *Grantham v. Nunn,* 187 N. C., 394; *Trust Co. v. Godwin,* 190 N. C., 517.

Therefore, it appearing that the plaintiffs have paid nothing to any creditor by reason of said guaranty or otherwise, they are not entitled to legal subrogation because they have neither discharged any debt of the Peoples Bank in full or *pro tanto.*

The plaintiffs, however, contend that they are entitled to conventional subrogation by reason of the fact that at the time of signing said guaranty they had an agreement with the debtor, to wit, Peoples Bank, that all collateral placed by said Peoples Bank with its creditor banks should be exhausted or held for the protection of plaintiffs and other directors so signing said guaranties. It will be observed that the collateral now in controversy was not returned to the receiver of the Peoples Bank by the four banks now having unpaid claims; or, in other words, the collateral in controversy was never in possession of the four creditor banks now asserting a claim against the plaintiffs on said guaranties.

The decision of the merits of the controversy resolves itself into a determination as to whether or not the plaintiffs had a valid and binding agreement with the Peoples Bank constituting a lien on collateral, or an assignment thereof.

Unquestionably, directors of a bank can make a valid and binding contract with the bank if such contract is entirely free from any taint of fraud, bad faith, or undue advantage. The defendant does not allege that any such defects were present in the transaction, but that the plaintiffs made no valid agreement with the bank for the reason that when such alleged agreement was made the directors were acting separately, individually, and not as a corporate body or exercising corporate functions, and therefore the alleged agreement was never legally adopted or made by the Peoples Bank.

A brief summary of the evidence is, perhaps, necessary to develop this aspect of the law of the case. The secretary and vice-president of the Peoples Bank, who was also a stockholder and director at the time the guaranties were executed by the plaintiffs and other directors, testified that "it was thoroughly understood by every one that signed it (guaranty) that all collateral amounting to about $1,000,000.00, we owed about $600,000.00, that all this collateral was to be exhausted before any man who signed it (guaranty) would be called on to pay a cent. In consequence of this all the guaranties were signed. This was not done at the directors meeting, but each man that signed it had that understanding. . . . No resolution was ever passed by the board of directors nor was there any agreement in writing among the directors to that effect. . . . No meeting was called to consider the matter of appropriating the collateral and no resolution was adopted by the board of directors to that end, but it was agreed among us. . . . There is no record of formal action taken by the board of directors as a body. I do not recall any resolution voted on and no action of the board in any other way, only informally talking about it."

Another director testified that "there was a meeting in the directors room of the bank for the consideration of guaranties of the indebtedness of the bank. The president of the bank was present and I think the vice-president was present also. We had a pretty good meeting. The statement was made . . . that this collateral stood between the creditors of the bank and the guarantors; that they would be exhausted before we were called upon. I put the question to Mr. Staton (the president), that I understood it that way and he said that was the way he understood it. . . . There was no resolution offered and no formal action by the board and no minutes made of the proceedings. There was a discussion among us as to where we would stand."

There was other testimony to the same effect.

Upon the record, as presented, we are of the opinion that no valid agreement was made by the corporation assigning the collateral in controversy or giving a lien thereon to the plaintiffs and the other directors.

"The members of a corporation cannot, separately and individually, give their consent in such manner as to bind it as a collective body, for, in such case, it is not the body that acts; and this is no less the doctrine of the common than of the Roman Civil Law." *Duke v. Markham,* 105 N. C., 131.

The proposition involved in the appeal is not one of form but whether or not there was valid corporate action in creating the lien or assignment of practically the total liquid assets of the bank. The plaintiffs cannot be deprived of their right by reason of failure of the proper officer to actually make a written minute or record of the proceedings for the reason "that proceedings of a corporate meeting of stockholders or directors are facts, and they may be proved by parol testimony where they are not so recorded." *Bailey v. Hassell,* 184 N. C., 459.

We are not inadvertent to the requirement of C. S., vol. 3, sec. 221 (b), requiring that minutes shall be kept of all meetings of the board of directors of banks. However, there is no objection appearing in the record to the testimony of the plaintiff and other witnesses as to what transpired among the directors about this transaction.

The final inquiry, then, is how shall corporate action as distinguished from individual action be exercised?

While the law has never required a strict adherence to form in the exercise of corporate function, it does regard, as essential, some expression of the collective body. This expression of the collective body or corporate body must be exercised by a resolution and this resolution must be duly adopted. "The courts of this country have generally adopted the common-law principle that, if an act is to be done by an indefinite body, the law, resolution or ordinance authorizing it to be done is valid if passed by a majority of those present at a legal meeting." *Cotton Mills v. Commissioners,* 108 N. C., 678; *Hospital v. Nicholson,* 189 N. C., 44; *Respass v. Spinning Co.,* 191 N. C., 809.

To the same effect is the principle declared in *Pinchback v. Mining Co.,* 137 N. C., 181, in these words: "While it is true, as contended by plaintiffs, that unless expressly required by the by-laws, it is not necessary that a written record of the proceedings of the stockholders' meeting be made, and that they may be proven by parol. It is also true that before the solemn acts of a corporation, especially when contractual, can be set aside, it must appear that a meeting was held and that the stockholders acting as such voted to do so."

This principle finds strong support in the case of *Asbury v. Mauney,* 173 N. C., 457, in this language: "It is stated in the minutes that a motion to this effect was made and seconded, but it does not appear that it was voted upon or adopted, and this omission has particular significance in view of the evidence of all of the stockholders who were

present at the meeting except the plaintiff, that after the motion was made and seconded, objection was raised, and it never came to a vote, and that the plaintiff, who was examined as a witness in his own behalf, did not contradict them, but contented himself with stating that the minutes contained a true account of the meeting, and that they were read over to the stockholders."

We hold, therefore, that upon the facts appearing in the record and the principle of law applicable thereto, the agreement relied upon by the plaintiff was never legally adopted as a valid exercise of corporate function. Hence, the equity of subrogation is not available to plaintiffs upon this record, and the judgment is accordingly

Affirmed.