22251. SMITH v. MISSOURI STATE LIFE INSURANCE CO.

Decided June 14, 1932. Rehearing denied July 11, 1932.

W. A. *Slaton*, for plaintiff in error. *C. E. Sutton*, contra.

Luke, J. Missouri State Life Insurance Company sued R. T. Smith for a balance due on his promissory note to it. The case was returnable to the February, 1931, term of the superior court of Wilkes county; and on November 3, 1931, a verdict was returned against Smith for $604.44 principal, with interest thereon amounting to $485.90. Smith excepts to the overruling of his motion for a new trial.

The defendant denied indebtedness, and further pleaded that "on September 9, 1926, this defendant sold the lands held as security by plaintiff to Osborne M. Bounds, as will appear from a bond for title of record. . . ;" that "on January 5, 1927, at the direction of said Bounds, this defendant conveyed said lands to George T. Armstrong by a deed of record, . . which said deed contained the following agreement: 'The said tract of land is subject to a loan for $2,000 principal due the Missouri State Life Insurance Company at St. Louis, Mo., and under the terms of said sale said second party assumes said loan and interest thereon due in full, and

agrees to pay the same.' Of which said contract and agreement plaintiff had full knowledge, and thereafter plaintiff accepted the agreement of said George T. Armstrong to pay said loan, accepted payments of principal and interest due on said loan from said George T. Armstrong, and released this defendant from any liability thereof, and plaintiff is estopped by its conduct from proceeding against this defendant for any sum, and this defendant is not liable to plaintiff in any amount. Wherefore this defendant prays that plaintiff be required to cancel and deliver up the note sued on in pursuance of the original agreement with this defendant when said sale was made."

Plaintiff admitted that Southern Finance Corporation was its agent, and that J. H. Von Sprecklen was manager for it. Defendant admitted a prima facie case and assumed the burden of proof. For convenience the parties to this case will be referred to as "plaintiff" and "defendant," just as they were in the trial court. We shall first indicate in chronological order the main documentary evidence in the case. It is as follows: (1) Smith's note to plaintiff for $2,000 borrowed money, dated March 6, 1922, and due February 1, 1927; (2) Smith's security deed to 301.8 acres of land securing the debt evidenced by said note; (3) bond for title, dated September 9, 1926, whereby Smith agreed to convey said land to Osborne M. Bounds for $500 cash and $3,250 evidenced by notes. On this bond for title appears the following: "I, Osborne M. Bounds, . . do hereby direct R. T. Smith . . to execute warranty titles to the within described tract of land to George T. Armstrong, which done shall be accepted as full compliance with the terms of this instrument, the purchaser herein assuming the loan as due on said lands in favor of the Missouri State Life Insurance Company." The foregoing transfer is dated January 5, 1927. (4) Deed from Smith to Armstrong, dated January 5, 1927, and containing the following provision: "The said tract of land is subject to a loan for $2,000 principal due Missouri State Life Insurance Company, and under the terms of said sale said second party assumes and agrees to pay the same." This deed also recites transfer of said bond for title by Bounds to Armstrong. (5) An unsigned deed to secure the debt, dated February 1, 1928, to be executed by George T. Armstrong to Missouri State Life Insurance Company, . . with a note for $1,250, payable in install-

ments beginning February 1, 1929 . . ; an unsigned receipt to be signed by the borrower . . ; instrument headed, "Requirements renewing loan 7211," dated April 19, 1928, stating that George T. Armstrong has applied for a loan of $1,250, offering 301.8 acres of land; that the loan would be accepted when 1927 taxes were paid in full and security deed executed by R. T. Smith in favor of Missouri State Life Insurance Company . . was released of record; an itemized calculation, dated April 19, 1928, showing amount of $405.92 necessary to be paid on loan No. 7211, . . directed to O. M. Bounds; a paper headed, "Application for first mortgage loan," signed by George T. Armstrong, dated February 18, 1928, directed to Missouri State Life Insurance Company, offering the identical 301.8 acres of land as security for $1,250 debt . . ; an abstract of title to said land duly certified by Clement E. Sutton. (6) Advertisement in Washington News Reporter, from which it appears that said land was duly advertised by plaintiff to be sold under the power of attorney in its security deed from defendant on the first Tuesday in January, 1931. (In this connection we shall state that it appears from the record that said land was sold as advertised and bought in by plaintiff for $1,000, and that the proceeds of the sale were credited by plaintiff on defendant's said note.) (7) Numerous letters which we deem it unnecessary to set out.

R. T. Smith testified that he sold said land to Bounds "about three years ago;" that plaintiff made no further demand upon witness for the payment of the debt, and that he thought it had been paid until he "got notice of the suit;" and that he based his defense upon these facts. O. M. Bounds swore that he paid Smith $1,000 for the timber on said land and "agreed to pay the Missouri State Life Insurance Company;" that he paid plaintiff $500 one time, and also made another payment to it; that plaintiff wrote him "a lot of letters." We next quote from this witness's testimony as follows: "I was to pay the note, and told Mr. Smith that I would pay it. . . Smith gave me a bond for title, and I kept that for about a year. . . The company agreed that if I would reduce the principal of the note so much they would execute me a new loan on the place. . . The company first agreed to take my note. I was to reduce it. They wanted the principal reduced several hundred dollars. After I deeded it to Mr. Armstrong the company was

willing to renew it for him. . . Later on I did not have the money to reduce the loan. . . The company several times sent a man down here from Augusta. Later on the reason it was not done was because I did not have the money. The company would not agree to surrender Smith's note unless they got my note and the payment. . . I never was able to reduce this note down to the amount requested by the insurance company. I did make a check for $500, and you mailed it to St. Louis, so I would have the money here when the check got back. They gave me credit. . . The Missouri State Life Insurance Company agreed to accept me as their debtor instead of Mr. Smith, and I was to reduce the loan several hundred dollars, but I never did reduce the loan. That is the only reason why I never closed up the papers. . . I don't think Mr. Smith knew anything about my failure to completely close the transaction. I think for a good while they did not write Mr. Smith. Mr. Smith was expecting me to attend to it, and I was expecting to attend to it. They wrote me frequently about it."

Clement E. Sutton testified, in substance, that he negotiated the Smith loan; that Smith "was insolvent and the company was perfectly willing to carry the loan;" that Smith had deeded said property to his son (which witness had overlooked), and he had to straighten out this matter; that witness wrote Smith in regard to his past-due principal and interest on February 1, 1927, and wrote him again on February 3, 1927; that witness wrote Bounds on March 4, 1927, and then wrote Smith; that Bounds made a payment of $500 on Smith's note on September 26, 1927, and paid $160 another time; that plaintiff first "had notice of Smith's and Bounds' deal on March 9, 1927;" that Smith wanted his note, and witness told him that he "would have to jump on Bounds;" that on September 23d witness mailed a letter to plaintiff, and notified it that Bounds sent the money; that Bounds was having "hard sledding," and transferred it to Mr. Armstrong, his brother-in-law; that plaintiff was unwilling to renew the loan unless it was reduced to $1,250, and Bounds agreed to reduce it; that plaintiff sent "a new note to be executed by Armstrong, and a new deed to the same land, but they could not raise the difference money;" that once or twice Smith asked witness "if those fellows had done anything," and witness said, "No;" and that finally the land was sold and

bought in by plaintiff for $1,000, and the proceeds of the sale credited on the back of Smith's note. "The Missouri State Life Insurance Company did agree that if Bounds or Armstrong would reduce that loan to $1,250, that they would permit him to make an entirely new loan. They did agree to accept Mr. Armstrong and Mr. Bounds as their debtor in place of Mr. Smith. The note stayed in St. Louis until I filed suit."

Counsel for the plaintiff in error states, in his brief, that Smith communicated with Sutton, who represented plaintiff, and "he communicated with Bounds," and Bounds paid plaintiff $160 interest on said loan on March 9, 1927; that plaintiff "did not further communicate with Smith until September 25, 1927, when they wrote him asking for the payment of the principal on the loan;" that Smith "again communicated with Sutton, and September 25, 1927, Bounds paid Sutton $500, which that day Sutton forwarded to Missouri State Life Insurance Company, stating to them that the payment was made by Bounds and Armstrong," and asking plaintiff for an extension of the loan; that plaintiff necessarily knew said payment was made to them by Bounds and Armstrong; that after September 10, 1927, no letters were written, and there was no evidence to show that Smith knew anything about further transactions in the premises until suit was filed; that Bounds testified that plaintiff "agreed to accept me as their debtor instead of Mr. Smith;" that papers necessary to close a new loan with Armstrong were sent to Sutton; and that Smith "defended on the ground that Missouri State Life Insurance Company had agreed to accept Bounds and Armstrong as their debtors in his place, and Bounds and Armstrong had assumed his debt, and he was therefore released."

"It is essential then, in order to constitute a novation, by which the original debtor is released, the creditor being bound thereby to discharge the debt as to him and look to another for the payment of his demand, that a contract be made between the new debtor and the creditor by which the claim can be enforced against such new debtor, and if the new debtor enters into no contract with the creditor by which he becomes the debtor of the creditor, so that the creditor may maintain an action against him, there is not a novation." 20 R. C. L. 367, § 9. Bounds testified: "The company would not agree to surrender Smith's note unless they got my

note and the payment. . . I never was able to reduce this note down to the amount requested by the insurance company." Bounds's testimony in this regard is fully sustained by the testimony of Sutton, and by the conduct of the plaintiff. "The person assuming to pay the debt must become unconditionally bound to the creditor to pay the debt to the original debtor. If the debt of which it is proposed to make a novation by another agreement is conditional, the novation can not take effect until the condition is accomplished." R. C. L. 369, § 12. In *Palmetto Mfg. Co.* v. *Parker,* 123 *Ga.* 798 (51 S. E. 714), where novation was involved, the court said: "In order, therefore, to take such a transaction without the operation of the statute of frauds, it must appear that the person substituted for the debtor was, by agreement between the creditor, the debtor, and himself, substituted for the original debtor, who was released from the promise. In other words, it must be shown that the person substituted as the debtor in the place of the person released, became such as the result of an agreement in which all three concurred." We quote next from *Collier Estate* v. *Murray,* 145 *Ga.* 851 (90 S. E. 52). "In the present case the defendant against whom proceedings to collect rent under the terms of the original lease had been instituted, and who set up a new contract, failed to show a novation: because, in the first place, there was no consideration for the new contract set up, and, in the second place, it does not appear from the evidence that there was a meeting of the minds upon the new agreement as alleged."

Could the plaintiff have maintained his action against any other person than Smith? If so, against whom—Bounds, or Armstrong, or both of them? Apparently, Bounds paid $660 to plaintiff, but no matter who paid it, such payment did not have the effect of releasing Smith and substituting Bounds as plaintiff's debtor. Admittedly the plaintiff held to Smith's note and security deed, and refused to surrender them to any one unless its debt was reduced from $1,500 to $1,250. Bounds says that he could not comply with the foregoing condition, because of lack of funds; and when proper papers were sent for Armstrong to execute in accordance with said condition, he failed to execute them.

Obviously, there was no accord and satisfaction in this case. Neither was there any estoppel, though counsel does not contend in his brief that there was. In short, we are of the opinion that the

jury's verdict was fully warranted, if not demanded, under all the facts and circumstances of the case.

Special ground 1 of the motion for a new trial complains of the following charge of the court: "If you believe that R. T. Smith, the defendant in this case, was indebted to plaintiff, . . and that Mr. Osborne Bounds or Mr. George T. Armstrong owed Mr. Smith, and that Mr. Bounds or Mr. Armstrong, or either, or both of them, agreed with Mr. Smith to pay his debt to the Missouri State Life Insurance Company, and the . . company accepted this arrangement and agreed to look to Mr. Bounds and Mr. Armstrong, or either or both of them, for its debt, then the liability of Mr. Smith to the . . company was discharged, and Mr. Smith would no longer be liable to it. . . It was not necessary, to make this agreement . . binding, that it should be in writing. If they actually agreed to accept Bounds and Armstrong, or either, as their debtors, it was immaterial whether it was verbal or written. I charge you . . that even though Missouri State Life Insurance Company may have been willing to substitute Mr. Bounds or Mr. Armstrong in place of Mr. R. T. Smith, but if you further believe that they imposed certain conditions as to payment on the loan that were not carried out, you would not be authorized to find that these parties were substituted for R. T. Smith."

The last paragraph of the foregoing charge is criticised as being contrary to the law, and as being unsupported by the facts of the case. The paragraph might have been more aptly expressed, but, viewed in connection with its context and in the light of the evidence in the case, we do not think that it warrants a reversal for any reason advanced. Furthermore, we lean strongly to the opinion that the evidence, when fairly construed, demanded the verdict.

It appears from special ground 2 that, upon the request of a juror for further instructions, the court repeated the charge set out in ground 1. We hold also that ground 2 discloses no reversible error.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*