30354. FIRST NATIONAL BANK OF ATLANTA *v.* AMERICAN SURETY CO. *et al.*

DECIDED MAY 6, 1944.   REHEARING DENIED MAY 19, 1944.

114

116

*Moise, Post & Gardner, Hirsch, Smith, Kilpatrick, Clay & Cody,* for plaintiff in error.

*J. R. Hutcheson,* for person at interest, not party.

*Jones, Williams & Dorsey,* contra.

PARKER, J. (After stating the foregoing facts.) The bank contends that the surety companies can not recover by way of subrogation to the rights of the telephone company, even though they

took an assignment from it of "all right, title and interest in and to the one hundred (100) canceled checks . . together with and including all choses in action, rights, claims, or right of recovery, which the undersigned [the telephone company] now has or may hereafter acquire, against the First National Bank of Atlanta, the indorsers on said checks, any persons who may have forged any indorsement thereon, and any and all other persons liable . . by reason of any forgery of indorsements on said checks or by reason of the acceptance, negotiation, or charging of the same to the account of the undersigned by the First National Bank of Atlanta." The surety companies contend in this connection that the action is based on a legal assignment and not on a claim of subrogation. These diverse contentions make necessary the consideration of the principle of subrogation as recognized and applied by our courts.

"Subrogation is the substitution of another person in the place of the creditor whose obligation is paid, so that the person in whose favor it is *exercised* succeeds to all the rights of the creditor. It is of equitable origin, being founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the parties, and its object is the prevention of injustice." (Italics ours.) *Jasper School District* v. *Gormley,* 184 *Ga.* 756, 758 (193 S. E. 248). "Subrogation is of two kinds. One is legal subrogation, which takes place as a matter of equity, without any agreement to that effect made with the person paying the debt. The other is conventional subrogation, which is applied where an agreement is made with the person paying the debt that he shall be subrogated to the rights and remedies of the original creditor." The courts incline rather to extend than restrict the principle of subrogation, and the doctrine has been steadily growing and expanding in importance, and has been applied much more extensively in American than in English jurisprudence. *Cornelia Bank* v. *First National Bank of Quitman,* 170 *Ga.* 747, 750 (154 S. E. 234).

While subrogation was originally a doctrine in equity, courts of law now recognize and apply it with equal vigor. The legislature of this State has dealt with the subject in various acts, as far back as the act of 1810 (Cobb's Digest, 592), and we have statutes and Code sections dealing with the subject. "A surety who has paid

the debt of his principal shall be subrogated both at law and in equity, to all the rights of the creditor, and, in a controversy with the other creditors, shall rank in dignity the same as the creditor whose claim he paid." Code, § 103-501. "A surety who has paid the debt of his principal shall be entitled, also, to be substituted in place of the creditor as to all securities held by him for the payment of the debt." § 103-502. Chief Justice Bleckley, in *Hull* v. *Myers,* 90 *Ga.* 674, 682, 683 (16 S. E. 653), in discussing these sections as they appear in the Code of 1882, said: "Subrogation, a native of equity but an alien in law, is thus naturalized in the latter, and admitted to an equal standing throughout the whole juridical territory. It seems plain that the Code intends to effect the substitution by its own vigor, and not leave it to be done by any court or any judicial proceeding . . What the Code did was to break down the exclusiveness of equity and carry the right into law, so as to make equity and law concurrent and coequal with respect to this subject-matter." See also, *Irby* v. *Livingston,* 81 *Ga.* 281, 283 (6 S. E. 591). In *Train* v. *Emerson,* 141 *Ga.* 95, 97 (80 S. E. 554, 49 L. R. A. (N. S.) 950), the Supreme Court held that whether the Code sections quoted "serve to convert the right of substitution from an equitable to a legal right becomes quite immaterial since the enactment of our uniform procedure act, which permits the enforcement of equitable and legal rights on the same action in a court having jurisdiction to administer both."

Regardless of its origin in equity, subrogation under our Code is now a legal as well as an equitable right. The proof of claim filed by the telephone company with the American Surety Company provides that the telephone company "does hereby assign and subrogate" to the surety company all rights in and to the loss for which the surety company shall pay. The bond of the Indemnity Insurance Company provides that upon payment of any loss, "it shall be subrogated to the extent of such loss to all claims and rights of the assured against any third person or persons." The assignment to the surety companies made by the telephone company conveyed all its rights, title, and interest in and to the forged checks, including all choses in action against the defendant bank on account of such forgeries. These writings show an agreement between the plaintiff surety companies and the telephone company whereby the former were subrogated to the rights and

remedies of the latter, and they make a clear case of conventional subrogation. Here we have three writings evidencing the agreement which is conventional subrogation, although such agreement is not required to be in writing. *Bleckley* v. *Bleckley,* 189 *Ga.* 47 (4) (5 S. E. 2d, 206). Conventional subrogation can take effect only by agreement; and it has been said to be synonymous with assignment. McKenzie *v.* Missouri Stables, 225 Mo. App. 64 (34 S. W. 2d, 136); Everett *v.* Staton, 192 N. C. 216 (134 S. E. 492); Joyner *v.* Reflector Co., 176 N. C. 274 (97 S. E. 44).

We do not find it necessary to decide whether the action in this case was based solely on the doctrine of subrogation as contended by the bank, or on an assignment as claimed by the surety companies. We think that question is immaterial, as the plaintiffs in the suit have an assignment which amounts to conventional subrogation. It may be said that the suit was predicated on both subrogation and an assignment, they being synonymous terms as used in this case. The right of action was assignable. Code, § 85-1805. *Lumpkin* v. *American Surety Co.,* 61 *Ga. App.* 777 (7 S. E. 2d, 687). There seems to be a well-recognized distinction between the right to sue on a claim of legal subrogation which is of an equitable nature, and the right to sue on conventional subrogation, based on an agreement of the parties. 25 R. C. L. 311; New York Title & Mortgage Co. *v.* First National Bank, 51 Fed. (2d) 485 (77 A. L. R. 1052); Boley *v.* Daniel, 72 Fla. 121 (72 So. 644, L. R. A. 1917A, 734); Metropolitan Casualty Ins. Co. *v.* First National Bank of Detroit, 261 Mich. 450 (246 N. W. 178); *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204).

While there are many cases dealing with the doctrine of subrogation, and some confusion and conflict in the decisions of the various state and federal courts, in this State an action based on conventional subrogation of the type presented by this case, clearly established by an agreement reduced to writing or otherwise shown, in which no equitable relief in aid of the claim is prayed, is an action at law, and is not controlled by the principles appertaining to an action in equity; and the conventional subrogees in this action did not have the burden of showing the superior equity as against the defendant in order to recover. This ruling is not in conflict with the decision in *Wilkins* v. *Gibson,* supra, for in that case the court was speaking of "the superior or equal equities of others," not

the respective equities of the subrogee and the alleged debtor. Nor is it in conflict with what was said in *Bleckley* v. *Bleckley,* supra, for in that case equitable relief was sought independently of statute in the enforcement of the claimed subrogation, and Mr. Justice Bell in his opinion clearly distinguished the case from those cases wherein no equitable relief (by the plaintiff) was prayed; and considering the opinion as a whole, it seems that he meant that a court of equity had exclusive jurisdiction of the *type* or *kind* of suit for conventional subrogation therein presented (where equitable relief was prayed).

■ The bank also contends that the surety companies are barred from any recovery against it because of an election of remedies whereby it is released or discharged from liability, or by reason of which the plaintiffs are now estopped from proceeding against it. The surety companies have no better claim against the bank than the telephone company had, and the contention is that when the telephone company made claim against the surety companies on their bonds for the defalcations of its employee in forging the names of the payees on its checks and appropriating them to his own use, it elected to pursue its remedy against Arnold instead of the bank, and ratified the action of the bank in paying the checks; and that this amounts to an election of remedies by which the surety companies are bound. "An election of remedies is defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts." 9 R. C. L. 956. "The basis of the doctrine of election of remedies is an estoppel, to wit, that a party can not, in the assertion or prosecution of his rights, occupy inconsistent positions. There must therefore actually exist two inconsistent remedies." *Curry* v. *Washington National Ins. Co.,* 56 *Ga. App.* 809, 811 (2) (194 S. E. 825). A party is entitled to pursue any number of consistent and concurrent remedies. *Friedlander* v. *Feinberg,* 27 *Ga. App.* 808, 809 (110 S. E. 26). "It has been said that the doctrine is a harsh rule which is not to be extended, and that it is to be applied by the courts with a wide discretion in order that it may not be made an instrument of oppression." 28 C. J. S. 1058, § 1, and cit.

Counsel for the bank cite a number of cases from other jurisdictions which apparently hold that to choose between an action

against the faithless employee and an action against the bank amounts to an election of remedies, and that an election having been made the plaintiffs could not later on pursue the other remedy. See Fowler v. Bowery Savings Bank, 113 N. Y. 450 (21 N. E. 172, 4 L. R. A. 145, 10 Am. St. R. 479); Arroyo-Colorado Nav. Dist. v. State National Bank (Texas Civ. App.), 90 S. W. 2d, 881; Jones v. First National Bank, 3 Neb. Unof. 73 (90 N. W. 912); Riley v. Albany Savings Bank, 36 Hun. (N. Y.) 513; Crook v. First National Bank, 83 Wis. 31 (52 N. W. 1131, 35 Am. St. R. 17); Bernhard v. Bank of America (Cal. App.), 114 Pac. 2d, 661; Insurance Co. of North American v. Fourth National Bank, 28 Fed. (2d) 933; National Surety Co. v. Perth Amboy Trust Co., 76 Fed. 87; American Surety Company v. Bank of California, 44 Fed. Supp. 81; and Midland Savings & Loan Co. v. Tradesmen's National Bank, 57 Fed. (2d) 686. Certain Georgia cases are also cited, including *Crane* v. *Atlanta & Lowry Nat. Bank*, 40 *Ga. App.* 83 (149 S. E. 58); *Equitable Life Assurance Society* v. *May*, 82 *Ga.* 646 (9 S. E. 597); and *Hardeman* v. *Ellis*, 162 *Ga.* 664 (135 S. E. 195). In the first of these cases Crane obtained a money rule against his attorney, in which he alleged that his attorney had collected $248 for him on a certain check for which he failed to account. Failing in this action against his attorney, Crane sued the bank for paying the check, on which he alleged his name as payee was forged. This court affirmed the ruling of the lower court denying a recovery against the bank, because there was an election between inconsistent remedies which barred the plaintiff from recovering from the bank after failing in the action against his attorney. In *Equitable Life Assurance Society* v. *May,* children of a deceased testator procured a decree in chancery against the executors of their father's will for the amount of a collection made by the executors on a policy of insurance to the proceeds of which the children were entitled. It was held that one of the children could not afterwards recover against the insurance company in an action on the policy because the decree against the executors was an election to treat the policy as extinguished, and the act of the executors in collecting the money on the policy was thereby ratified. And in *Hardeman* v. *Ellis,* general rules as to election of remedies are stated. Where one may elect between two inconsistent positions or proceedings, the choice of his position or proceeding must be made

before bringing suit; and he can not bring either action without selecting and determining to accept and occupy a position consistent with that action or position and inconsistent with the other. We think it manifest that the facts of the case at bar clearly distinguish it from the cases relied upon by the plaintiff in error.

Counsel for the surety companies cite a number of foreign cases which seem to sustain their contention that there was no election of remedies in this case which now bars the plaintiffs from recovery against the bank. See Grubnau v. Centennial Nat. Bank, 279 Pa. 501 (124 Atl. 143); National Surety 'Co. v. Bankers' Trust Co., 210 Iowa 323 (228 N. W. 635); Hartford &c. Trust Co. v. Riverside Trust Co., 123 Conn. 616 (197 Atl. 766); Tarrant American Savings Bank v. Smokeless Fuel Co., 233 Ala. 507 (172 So. 603); First &c. Bank & Trust Co. v. Massachusetts &c. Ins. Co., 210 Ind. App. 361 (200 N. E. 449); Martin v. Federal Surety Co., 58 Fed. (2d) 79; Maryland Casualty Co. v. Chase Nat. Bank, 153 Misc. 538 (275 N. Y. S. 311); Central National Bank v. First A. & M. National Bank, 171 Va. 289 (198 S. E. 883); Allen v. Puritan Trust Co., 211 Mass. 409 (97 N. E. 916, L. R. A. 1915C, 518); and New York v. Bronx County Trust Co., 261 N. Y. 64 (184 N. E. 495). Foreign decisions are not binding on this court however persuasive they may be. *Slaton* v. *Hall,* 168 *Ga.* 710, 717 (148 S. E. 741, 73 A. L. R. 891), and cit.; *Ætna Life Ins. Co.* v. *Evans,* 56 *Ga. App.* 336 (192 S. E. 483). Regardless of what the rule may be in other places we think our courts have in effect held that there was no election of remedies so as to bar the action of the plaintiffs under the facts of this case.

In *First Nat. Bank of Ocilla* v. *Harris,* 25 *Ga. App.* 667 (104 S. E. 574), it appears that the cashier of the bank forged the name of the payee on a check drawn on it by Mrs. Harris, and collected the money on the check from the bank. When Mrs. Harris discovered the forgery, and after she had made a fruitless effort to recover the money in legal proceedings against the cashier, she sued the bank. One of its main contentions in defending the action was that Mrs. Harris had treated the indebtedness as that of the cashier, and had proceeded against him first by attachment and then by bankruptcy proceedings, which was virtually a plea of election of remedies. The trial court denied that plea and directed a verdict for Mrs. Harris against the bank, and that judgment

was affirmed by this court. In *American National Bank* v. *Fidelity & Deposit Co.*, 129 *Ga.* 126 (58 S. E. 867, 12 Ann. Cas. 666), it was charged that a receiver appointed by the superior court committed a breach of trust by improperly withdrawing from a bank funds, the assets of an insolvent corporation, on checks drawn by the receiver but not counter-signed by the judge as provided in the order of the court. Certain creditors of the corporation brought suit and recovered judgment against the receiver and the surety on his bond for the faithful performance of his duties relating to the funds. It was held that when the surety paid the judgment thus obtained it was subrogated to the rights of the creditor to enforce the liability incurred by the bank on account of its participation in the breach of trust by the receiver. This was tantamount to a holding that there was no election of remedies so as to bar the action against the bank, although that question as such was not considered. In *Moultrie Banking Co.* v. *Moore*, 172 *Ga.* 368 (157 S. E. 685), the bank was sued for paying a check drawn on it upon an alleged forged indorsement of the name of the payee in the check. One of the bank's defenses was that the plaintiff was estopped from proceeding against it because he had not repudiated the transaction, but had negotiated with another person, a prior indorser on the check, for settlement, and had accepted partial payment from such person and had made no demand on the bank for a period of about three years, and not until such person with whom the plaintiff negotiated had absconded. This defense was asserted in an amendment to its answer offered by the bank. The Supreme Court held that a demurrer to this amendment was properly sustained. We conclude and hold that the action of the telephone company in the instant case, in making demand on the surety companies for the losses sustained through the forgeries of its checks, and in assigning its rights and claims in the premises to the surety companies paying the losses, did not amount to an election as between inconsistent remedies which bars the surety companies as assignees of the telephone company from proceeding against the defendant bank.

■ The telephone company signed a receipt each month, when it got its statements and canceled checks or vouchers from the bank. in part as follows: "It is hereby agreed that the undersigned will examine forthwith into the accuracy of the statement

and regularity and validity of the said vouchers, and it is further agreed that at the expiration of ten days from the date hereof, the said statements shall be conclusive evidence of the correctness of the balance therein shown, and the bank shall be, and is released from all claims in respect to any and every item shown in the said statement, save such as shall have been questioned or objected to in writing within the said ten days." The failure of the telephone company to comply with the provisions of these receipts and report the forgeries earlier is urged as a reason why the plaintiffs can not now recover. We have found no case in this State dealing with this precise question; but there are decisions from other jurisdictions directly in point. In Detroit Piston Ring Co. v. Wayne County &c. Bank, 252 Mich. 163 (233 N. W. 185, 75 A. L. R. 1273), a receipt similar to those involved in this case was relied upon by a bank and considered by the courts, and the Michigan Supreme Court said: "A notice printed on a statement accompanying paid checks returned by a bank, to the effect that if no error is reported in ten days the account will be considered correct, and a receipt given therefor by the depositor, reciting that the statement of account and paid checks listed thereon are accepted as genuine and correct unless notice to the contrary shall be received by the bank within ten days, do not discharge the bank from liability to the depositor for the amount of checks on which the indorsement of the payee was forged, though notice of the forgery was not given within the ten-day period." The principle on which this decision and others are based is that there is an account stated between a bank and its depositor, by reason of the furnishing of monthly statements by the bank and no objections by the depositor, which account stated may be opened for fraud or mistake shown. See National Surety Co. v. Manhattan Company, 252 N. Y. 247 (169 N. E. 372, 67 A. L. R. 1113); Los Angeles Investment Co. v. Home Savings Bank, 180 Cal. 601 (182 Pac. 293, 5 A. L. R. 1193); Shipman v. Bank of New York, 126 N. Y. 318 (27 N. E. 371, 12 L. R. A. 791, 22 Am. St. R. 821). We therefore hold that the failure of the telephone company to report the forgeries more promptly to the bank does not bar a recovery against the bank.

■ Another contention of the plaintiff in error is that the telephone company was negligent in not discovering the forgeries sooner, and should be barred from recovering now from the bank,

and that the surety companies as plaintiffs are in the same position. While the plaintiffs have no better rights than the telephone company had, we can not agree that its negligence would have barred a recovery by it, or that the surety companies are now barred because of its negligence. "The duty imposed on a depositor to examine his passbook, statements, and returned checks does not extend to an examination of the signatures of the payees or of other indorsements on the returned checks; rather, it is the duty of the bank to determine the genuineness of such indorsements and to pay upon the check at its peril; the depositor is not expected, nor is he required, to know whether or not such indorsements are genuine. This rule is applicable even where an agent in the employ of the depositor has forged the payee's indorsement." 7 Am. Jur. 366, §.512. Our Supreme Court has recognized and applied this principle in *Atlanta National Bank* v. *Burke,* 81 *Ga.* 597 (7 S. E. 738, 2 L. R. A. 96), in holding that "we think, however, that the fact that the bank reported to Burke in his account that the check was paid to Mrs. Knapp, the payee, relieved Burke from any diligence whatever. He was then under no obligation to look to see whether the check was paid upon a forged indorsement, or not; he had a right to accept this statement of the bank as true, and to rest upon it." In Insurance Company of North America *v.* Fourth National Bank of Atlanta, 12 Fed. (2d) 100, Judge Sibley said: "But the depositor's duty of diligence does not extend to examining for or detecting forgeries in the indorsements. The depositor has no peculiar information about these. Responsibility for them was originally, and continues to be, on the banker and those with whom he deals. If the depositor has any duty, it is to complain promptly after discovery of a forged indorsement on pain of defeat for delay thereafter actually causing loss to his banker."

■ It clearly appears in this case that the telephone company was a general depositor of the bank, and that the checks aggregating the sum sued for were paid by the bank on forged indorsements of the names of the payees therein, and charged as paid to the deposit account of the telephone company. "When one deposits money in a bank on general deposit, the bank thereby becomes the debtor of the depositor for the amount of the money so deposited, and undertakes impliedly to pay the money either to the depositor himself or to some person to whom he directs it to be paid."

*Darien Bank* v. *Clifton,* 156 *Ga.* 65 (1 *a*) (118 S. E. 641). This case also holds that where a bank receives money on deposit, it can not pay out and charge the amount of the money to the depositor except upon his order, and the bank in such case can not avoid liability by showing that it paid out the money in good faith, believing that the person presenting the check was authorized by the depositor to sign it and draw out the money, when in fact he had not been so authorized. "That a bank which paid out money on checks to which a depositor's signature was forged, did so in good faith, believing from inquiry of the person presenting the checks that he was authorized to sign the depositor's name, does not relieve it from liability to the depositor." *Georgia Railroad & Banking Co.* v. *Love & Good Will Society,* 85 *Ga.* 293 (11 S. E. 616). A bank paying a check of a general depositor upon a forged indorsement of the name of the payee, as between itself and the drawer of the check, must bear the loss. "Under such facts the bank was not relieved of its own duty of identification, and acted at its peril in paying the check to any person other than the payee named therein." *First Nat. Bank of Waycross* v. *Guaranty Life Ins. Co.,* 45 *Ga. App.* 289 (164 S. E. 212); *Moore* v. *Moultrie Banking Co.,* 39 *Ga. App.* 687 (148 S. E. 311). Under these well-established principles of banking law it readily appears that the bank was liable to the telephone company for the payment of its forged checks, and is therefore liable to its assignees and subrogees, the plaintiffs in the case. *Federal Deposit Ins. Corp.* v. *Thompson,* 54 *Ga. App.* 611 (188 S. E. 737).

■ The evidence demanded the verdict as directed by the court, and there was no error in overruling the motion for new trial.

*Judgment affirmed. Sutton, P. J., concurs.*

FELTON, J., concurring specially. I wish to add the following reasons why I concur in the judgment. I think the action is sustainable on the theory of assignment or conventional subrogation. The petition alleged that the telephone company and the petitioners had demanded the sums claimed to be due and that the bank refused to pay. The bank's answer states that it admits that it denies liability and refuses to pay petitioners the amount claimed. I take this admission to mean that the bank admits that the telephone company demanded payment and that it was refused. Thus the loss to the telephone company is established. Its contract with

the telephone company was breached as a result of which it had a cause of action. It could either assign this cause of action or contract that another should stand in its place with reference thereto. The sureties are not barred by having elected an inconsistent remedy, for the reason that the sureties were not the sureties of the defaulting employee, but were obligated on a fidelity bond in an undertaking between them and the telephone company, to which the defaulting employee was not a party.