## FLORIDA CENTRAL & PENINSULAR R. CO. *v.* USINA.

1. A bill of sale purporting to show the conveyance of title to A., "president of" a designated corporation, "his executors, administrators and assigns," is inadmissible for the purpose of showing title in the corporation. If, however, such a bill of sale be admitted in evidence, it is competent for the person to whom it was given to explain by parol that its real purpose was to secure a debt and not to convey the absolute title.
2. A party to a case founded upon an alleged contract with a corporation is incompetent to testify that the contract in question was made by the defendant through an agent of the latter since deceased.
3. When, in the trial of an action against a corporation for the breach of an alleged contract, the terms of a contract between the defendant and a deceased individual not a party to the case are collaterally relevant, an agent for the defendant, who acted for it in making this latter contract, is not, because of the death of the other party thereto, incompetent to testify with respect to the same.

Argued July 17,—Decided August 7, 1900.

Complaint.   Before Judge Norwood.   City court of Savannah.   September 8, 1900.

*Denmark, Adams & Freeman,* for plaintiff in error.
*Saussy & Saussy,* contra.

Cobb, J.   Michael P. Usina brought suit against the Florida Central and Peninsular Railroad Company to recover for services alleged to have been rendered to that company in the capacity of captain of the steamboat Farmer, alleged to have been owned by it.   The petition contained two counts; the first founded upon an express contract by the defendant to pay the plaintiff a stated sum per month for his services; the second a

·count alleging that the services were rendered at the request of the defendant, and were reasonably worth the sum sued for. The jury returned a verdict in favor of the plaintiff for the amount sued for.    The defendant's motion for a new trial having been overruled, it excepted.

1. There was no evidence authorizing a finding that the defendant had made with the plaintiff an express contract under the terms of which he was to receive a stated amount per month. The plaintiff relied for a recovery upon the second count in the declaration, in which he claimed that he had rendered the services at the request of the company, and that they were reasonably worth the amount sued for.    In order to make out the case on this count he endeavored to prove that the steamboat upon which he had rendered the services as captain was the property of the defendant.    For this purpose he offered in evidence a bill of sale, executed prior to his term of service, in which the South Carolina Steamboat Company conveyed the steamboat in question to "H. R. Duval president of the Florida Central and Peninsular Railroad Co., his executors, administrators, and assigns;" the bill of sale being one in the ordinary form and in which whenever the name of Duval was mentioned it was followed by the words above quoted.    It appears from the record that the purpose for which the bill of sale was offered was to show title in the defendant.    It did not do this.    The words "president of the Florida Central and Peninsular Railroad Company," which followed the name of Duval, are words merely descriptive of the person who is a party to the contract, and are not to be looked to for any other purpose, such words in no way characterizing the capacity in which Duval was contracting with the other party to the bill of sale.    *Lester* v. *McIntosh,* 101 *Ga.* 675 ; Anderson's Law Dictionary, *Descriptio personæ;* Com. *v.* Lewis, 1 Met. (Mass.) 151.    While such words would in no case limit the title of the party to the contract, the principle is especially applicable in the present case.    Here wherever the name of Duval, president, etc., appears, it is followed by the words, his executors, administrators, etc., which indicate that he was acting in his individual capacity.    The purpose for which the bill of sale was offered being to show title in the defendant, and the same not having this effect, the

court should have excluded it from evidence upon the objections made by the defendant. If it had been shown that the steamboat in question was actually purchased with the funds of and operated by the defendant, then perhaps the bill of sale would have been admissible for the purpose of showing that the defendant was the real owner and Duval held the title simply in trust for it. But if it had been offered and admitted for this purpose, it would have been competent for the defendant to prove, as it sought to do, in explanation of this apparent ownership of Duval in their behalf, that the title was taken in him, not as owner of the vessel, but to secure a debt due to him, or the company which he represented, by the real owners of the vessel; that it had no other interest in the property than that of a creditor, did not operate or control the steamboat, and had no other connection with the boat or its operations.

2. Complaint is made that the court erred in permitting the plaintiff to testify as follows: "It was the F. C. & P. that employed me and paid me $150.00 a month. That was not on the Farmer. I got $100.00 on the Farmer." The objection to this evidence was, that as the plaintiff had no written contract of employment, and as the party who employed him was Maj. Williams, an agent of the defendant, since deceased, evidence as to any contract made with Williams was inadmissible, because, if made with him as agent of the defendant, he was dead; and if made with him individually, it was irrelevant. Fairly construed, we think the evidence admitted would convey to the minds of the jury the impression that the defendant had employed the plaintiff at a salary of $150.00 per month at some time, but not on the Farmer, and that the plaintiff had been transferred to the Farmer by the defendant at a lower salary, being the amount sued for in the present case. So construing the testimony, it was clearly inadmissible, for the reasons set forth in the objections to the same. Civil Code, § 5269.

3. The defendant offered the testimony of Duval, its president, and of other officers of the company, to show that Maj. Williams and his associates were the owners of the steamboat Farmer, and that under a contract made with the company and the owners, through Williams, the steamboat was operated merely as a freight connection of the company, and that it had no

further interest in the steamboat or its operations. The evidence of these witnesses was objected to by the plaintiff, on the ground that, Williams being dead, they were not competent to testify as to any communications with him. Such a case does not fall within the letter, reason, or spirit of the evidence act of 1889, embodied in the Civil Code, §5269. The contract between Williams and his associates and the defendant was not the one which was sought to be enforced in the present case; but, even if it had been, there is nothing in the act which would have rendered the officers and agents of the defendant incompetent to testify as witnesses. See *Rosser* v. *Georgia Pacific Railway Co.*, 102 *Ga.* 164. It was never contemplated that the act of 1889 should be so construed as to render a party to a case incompetent to testify to a contract made with him by one since deceased, whose legal representatives are not parties to the case, and whose estate is in no way to be affected by the judgment to be rendered, when the fact of such a contract is a relevant and material fact in a controversy between the living party and a third person.

The errors committed by the judge in his rulings on evidence were of such a character as to require us to order a new trial. As there is to be another hearing, and as the evidence may be different on that hearing, we will not now rule on the motion to nonsuit or express any opinion as to the sufficiency of the evidence.          *Judgment reversed.   All the Justices concurring.*