FLOYD *v.* BOSS *et al.*

No. 8420.   FEBRUARY 27, 1932.

*Orrin Roberts* and *E. W. Roberts,* for plaintiff in error.

*I. L. Oakes, H. C. Cox, C. N. Davie, A. M. Kelly, J. F. Kemp,* and *L. S. Camp,* contra.

ATKINSON, J.   On January 11, 1929, J. E. Boss sold and conveyed an improved lot in Loganville, Georgia, to C. S. Floyd. The purchase-price was $750 cash and ten shares of the capital stock of the Farmers & Merchants Bank.   On January 17, 1929, the bank was taken over by the State superintendent of banks, as an insolvent institution.   Immediately Boss endeavored to rescind, and tendered to Floyd the $750 and the shares of stock and demanded a deed of reconveyance.   Floyd refused to rescind; whereupon Boss instituted suit, on January 23, 1929, for rescission on the ground of fraud, charging that the shares of stock were worthless, and that Floyd, who was a director and vice-president of the bank, knowing that the shares of stock were worthless, induced the trade by stating to Boss that the stock had a book value of $125 per share, a cash value of $100 per share, and was well worth on the market $80 per share, which statements Boss, being ignorant of the value of the stock, accepted as true.   The answer of the defendant denied having made any statements as to value of the stock, or that he had induced the trade, but alleged that he had been persuaded by Boss to make the trade, who had ample opportunity to inform himself as to the value of the stock; that it was generally known that the stock was of very little value, and peti-

tioner stated that he cared very little for the stock—that it was the cash that he desired. On the trial the evidence showed that the bank was closed and reorganized in 1925, and since that time had not been in substantially better condition than when it was closed; that "the bank was never in any condition during that time—it was just struggling;" that Boss had heard of the former closing of the bank; that he made no investigation as to the value of the shares of stock otherwise than through Floyd (as to which the evidence was in conflict); that the shares at the closing of the bank, six days after the trade, were worthless, and carried a statutory liability to depositors and creditors of one hundred per cent.; that certain shares had recently been sold at public sale at $25 per share; that at the time of the closing and reorganization in 1925, and ever since, Floyd had been director of the bank, was on the loan committee, and discussed the condition of the bank with the directors "at various and sundry times." The testimony of Boss as to the alleged statements by Floyd concerning the value of the shares of stock and of Floyd's importuning Boss to make the trade was flatly denied by Floyd. The verdict was for the plaintiff. The exception is to a judgment overruling the defendant's motion for a new trial.

■ A material representation falsely made by a vendor to a vendee to induce a sale, and made with knowledge of its falsity and acted upon to the vendee's injury, amounts to actual fraud. (*Emlen* v. *Roper,* 133 *Ga.* 726(2), 66 S. E. 934; *Brannen* v. *Brannen,* 135 *Ga.* 590, 69 S. E. 1079; *Mangham* v. *Cobb,* 160 *Ga.* 182, 185, 127 S. E. 408), and will void a contract . (Civil Code, § 4254), and authorize rescission by the vendee if he acts promptly after discovery of the fraud and restores or offers to restore whatever of value he has received by virtue of the contract. Civil Code, § 4305.

(*a*) Under conflicting evidence in the instant case, whether the contract was induced by actual fraud of the defendant and whether the plaintiff had sufficient opportunity to ascertain the condition of the bank were questions for the jury; and a request for the court to charge them as follows was not properly adjusted to the pleadings and the evidence: "A contract will not be rescinded or set aside because of the falsity of statements made by a party to a contract, unless some fraud or artifice was practiced by the

■

vendor to prevent an examination of the thing sold. If the vendor, Floyd, made to the vendee, Boss, statements as to the value of the stock in question and these statements were false, and you believe that the vendee, Boss, by the exercise of ordinary care and diligence could have discovered that the stock was worth less than it was represented to be by Floyd, then Boss could not recover or rescind the contract, as prayed for in this case. There must be fraud or artifice upon the part of the vendor to prevent the examination of the property sold, to authorize rescission in cases of this kind."

(*b*)   On the question of knowledge of an officer of a bank of its insolvency, see *Lowry Banking Co.* v. *Empire Lumber Co.*, 91 *Ga.* 624 (17 S. E. 968).

(*c*)   The case upon its facts does not come within the ruling in *Brannen* v. *Brannen,* 135 *Ga.* 590, supra, where it was stated: "The court committed no error in striking a plea of the defendant, to the effect that the vendor misrepresented to him the character and value of the timber on the land, when, as far disclosed by the plea, the defendant had sufficient opportunity to inspect the same and was not prevented from so doing by any artifice or fraud of the vendor, but relied upon the latter's representations as to these matters.   *Thompson* v. *Boyce,* 84 *Ga.* 497 (11 S. E. 353) ; *Tindall* v. *Harkinson,* 19 *Ga.* 448 ; *Slone* v. *Moore,* 75 *Ga.* 565 ; *Martin* v. *Harwell,* 115 *Ga.* 156 (41 S. E. 686)." Nor is it within the ruling in *Arthur* v. *Brawner,* ante, 477, and other similar cases.

(*d*)   If the defendant knew of the insolvency of the bank at the time of the trade, he knew the stock was worthless. If, knowing the stock was worthless, he stated to the plaintiff, in negotiating the trade, that the stock had a cash value of $100 a share and was well worth on the market $80 a share, and the plaintiff accepted and acted upon such statement to his injury, the defendant would thereby have committed actual fraud. It is not apparent how the plaintiff could have ascertained the insolvency of the bank, otherwise than by asking the officers, and he had the right to accept the statement of the defendant as an officer on that subject.

■   In the instant case the official connection of the defendant with the bank, affording him opportunity for knowing the condition of the bank, was a fact to be considered by the jury in de-

termining whether he knowingly made false statements as to the value of the stock; and a request to charge was misleading and not properly adjusted to the pleadings and evidence, which would instruct the jury "that the fact of the defendant being vice-president of the bank and a director thereof does not as a matter of law involve any duty with reference to purely personal acts, such as the transfer of shares of bank stock owned by him, and he acts merely as an individual, and the question of whether he acted as an individual in good faith or on the contrary is to be considered entirely apart from the question as to his duty as an official in the bank. In this transaction between Floyd as a stockholder and Boss, the purchaser, you should consider the question of whether Floyd acted in good faith or on the contrary, entirely apart from the question as to his duty as an official in the bank." This ruling does not misapply the principle stated in *Bennett* v. *Carter,* 168 *Ga.* 133 (147 S. E. 380), that, "As an officer, a director of a bank in the performance of his duties as such director should know whether such bank is solvent or insolvent, and in an action brought against him in his capacity as a director for misperformance or nonperformance of official duty, whereby the bank sustained loss, knowledge may be imputed; but in an attack made upon a transfer of stock individually owned by one who is a director in a bank, which transfer is alleged to be fraudulent, evidence that the defendant did not in fact know of the insolvency of the bank is admissible, and the jury may be instructed to consider such evidence of good faith, and that if the transferor did not know of the insolvency of the bank and could not by the exercise of reasonable diligence have ascertained that the bank was insolvent, or if he did not know a fact which would have put a reasonably prudent man on inquiry which would have led to knowledge of its insolvency, then the jury might find for the defendant."

■ On request of the attorneys for the defendant the court instructed the jury: "I charge you as a matter of law that no fiduciary or confidential relation has been shown to exist between the parties in this case; as the confidential relation between contracting parties which will authorize one of them to neglect the ordinary precaution of the prudent man, and to rely upon the representations of the other, arise only where one party is so situated as to exercise a controlling influence over the will, conduct, and in-

terest of another; or where from similar relations of mutual confidence the law requires the utmost good faith, such as partners, principal and agent." Immediately following this instruction the charge proceeded: "But I charge you gentlemen that sometimes under the peculiar circumstances of the case there is an obligation to communicate material facts which are in the possession of one party and unknown to the other; and whether or not the peculiar circumstances in this case put Dr. Floyd in that position in relation to the plaintiff Boss I leave for you to say from the evidence in this case." The requested instruction as given in charge did not properly apply the principle stated in the first division of this opinion, and the qualification thereof as above stated is not cause for a reversal.

■ A ground of a motion for a new trial should be complete within itself. It does not appear in the ground wherein the following incomplete instruction was harmful to the movant: "When from any reason one party has a right to expect full communication of the facts from the other where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silence; when the concealment is of intrinsic qualities of the article which the other party, by the exercise of ordinary prudence and caution, could not discover."

■ "It is not cause for a new trial that the court read in charge to the jury a code section, part of which was applicable to the case and part not; it not appearing that the reading of the inapplicable part was calculated to mislead the jury or was prejudicial to the rights of the losing party." *Martin* v. *Hale*, 136 *Ga.* 228(2) (71 S. E. 133). The court gave in charge Civil Code §§ 4624, 4625, as follows: "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case. Fraud may be consummated by signs, or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another." While the portions of these sections relating to confidential relations between the parties and consummation of fraud by signs and tricks, and through agents employed to deceive, were not authorized by the evidence, they were not cal-

culated to mislead the jury; and the other portions being applicable to the pleadings and evidence, the instruction is not cause for a reversal.

■ An exception to a decree is not ground of a motion for a new trial. There should be a direct exception in the bill of exceptions.

■ The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur.*