1. From the allegations and prayers it is apparent that the plaintiff was seeking conventional subrogation, of which only a court of equity has jurisdiction. Accordingly, this court, and not the Court of Appeals, is the proper court to review the judgments overruling a demurrer to the petition, and refusing to grant a new trial after verdict for the plaintiff.
2. The plaintiff's allegations were sufficient to show the rendition of services of value to his mother, under an agreement with her that he would be subrogated to the annuity provided for her in the will of her husband, the plaintiff's father.
3. Such being the basis of the suit, the cause of action was not barred by the statute of limitations, since the plaintiff had the same period of time in which to sue that his mother would have had, the time being ten years from the qualification of the defendant executor, plus the twelve-months exemption period, which time had not expired.
4. An agreement for subrogation is not required to be in writing.
5. Services rendered by a son for his mother are presumed to be voluntary; but this presumption may be rebutted by alleging facts which plainly indicate that it was the intention of both parties that compensation should be made. It is unnecessary for this purpose to allege an express agreement, either written or oral. *Page 48 
6. It was unnecessary for the plaintiff to allege an agreement with the testator or his legal representative, in order to claim subrogation. The alleged agreement with his mother was sufficient for this purpose.
7. Where a legacy consisted of an annuity payable unconditionally to the widow of the testator so long as she lived, but the will further provided that any portion of the property bequeathed to her which was not disposed of by her during her life should revert on her death to the children and grandchildren of the testator, an agreement made by her for subrogation of another to her claim to the legacy constituted a disposition by her during her life, within the meaning of the will, to the extent of the consideration received, and prevented reversion to that extent. An agreement for subrogation differs from a present equitable assignment, in that it requires a decree of court to make it effective.
8. The petition did not show upon its face that the cause of action was barred by laches.
9. The court did not err in admitting evidence of the value of the plaintiff's services, over objection on the ground that he had sued upon an express agreement but was seeking by the evidence to recover on a quantum meruit. This evidence was relevant and admissible, for the reason that the plaintiff's right to subrogation was limited to the value of the services rendered.
10. Testimony of the wife and employees of the plaintiff in regard to the kind and value of the services rendered, and in reference to the alleged agreement between the plaintiff and his mother, was not inadmissible under the Code, § 38-1603, for the reason urged, since the testimony did not relate, as contended, to transactions or communications with the testator whose executor was being sued.
11. The charge to the jury on the subject of payment was not erroneous in that it was not adjusted to any contention made by the defendant. Other instructions were not subject to the assignments of error made thereon.
12. There was no merit in other special assignments of error contained in the motion for new trial. The evidence was sufficient to prove the case as laid, and did not show as a matter of law that the alleged cause of action was barred by laches. The court did not err in overruling the motion for new trial. The record presents no question as to error in the form of the decree.
 No. 12894. SEPTEMBER 16, 1939, REHEARING DENIED OCTOBER 14, 1939.
George L. Bleckley and T. H. Bleckley are sons of J. S. Bleckley and Mrs. J. S. Bleckley, otherwise referred to as Mrs. Sallie Bleckley. Both the father and the mother are now deceased. George L. Bleckley sought to recover of T. H. Bleckley, as executor of their father, a sum of money originally payable under the will as an annuity to their mother, basing his claim on an assignment by the mother or on subrogation, the exact nature of the claim being one *Page 49 
of the matters of contention. The executor's demurrer was overruled, a recovery was had, a motion for new trial was overruled, and the executor excepted.
J. S. Bleckley died on January 15, 1925. In his will George L. Bleckley and T. H. Bleckley were named as executors, and both qualified on February 2, 1925. There were other suits between them in different capacities before the present case arose. In December, 1930, at the instance of T. H. Bleckley and others interested, George L. Bleckley was removed by the court of ordinary from his trust as executor, for failure to co-operate with T. H. Bleckley as coexecutor, mismanagement of part of the estate, and refusal to account to his coexecutor or permit him to have access to details of certain sales made by George L. Bleckley. Afterwards, in October, 1931, T. H. Bleckley, as sole executor of J. S. Bleckley, filed a suit against George L. Bleckley as executor of the estate of J. M. Bleckley, deceased, on promissory notes executed by J. M. Bleckley to J. S. Bleckley as purchase-money for land sold under bond for title, in which suit the plaintiff recovered a verdict and judgment for more than $9000. J. S. Bleckley also left outstanding a deed by which he conveyed the same land to the Federal Land Bank of Columbia to secure a debt of about $1500. T. H. Bleckley, as executor, was without funds with which to pay this debt. In view of the facts regarding the land and other facts alleged, the estate of J. S. Bleckley was placed in the hands of a receiver in February, 1935, by consent of all of the parties in a suit instituted for that purpose by George L. Bleckley and others against T. H. Bleckley as executor of the estate of J. S. Bleckley. T. H. Bleckley was made receiver, and was not removed as executor. The land covered by the bond for title and the security deed was sold by the receiver for $7000. After payment of the debt of the Federal Land Bank, receiver's and attorneys' fees, and other expenses, there remained in the hands of the receiver about $3000 as the proceeds of sale. This appears from an order of the superior court rendered on October 5, 1935, confirming the sale and directing disposition of the proceeds in part. The will of J. S. Bleckley, copy of which was attached to the petition for receiver, contained the following provisions: "2. I will and declare that with reasonable promptness my executors hereinafter named shall pay over to my beloved wife the sum of five hundred dollars ($500) per year, to be hers absolutely." *Page 50 
Item 3 divided the residue of the estate equally among the wife and children of the testator, with some qualification as to children. Item 4 declared that the provisions made for the wife were intended to be in lieu of dower and year's support. Item 5 was as follows: "If on the death of my wife she leaves undisposed of any portion of the property going to her under this will, I will and desire that it shall be divided among my children, one share going to the children of my deceased children, as in the case of my other property."
On November 23, 1935, the present action was filed by George L. Bleckley against T. H. Bleckley as executor of the estate of J. S. Bleckley. This proceeding was instituted, not as an independent suit, but as an intervention in the receivership case. There is not contention that George L. Bleckley could not proceed in this manner. It is contended that the proceeding was bad in substance, for several reasons. The petition so filed as an intervention was substantially as follows: J. S. Bleckley died a resident of Rabun County on January 15, 1925, after having executed a will by the terms of which T. H. Bleckley was named as an executor, and under which after probate he duly qualified. T. H. Bleckley is now acting as the sole executor of the estate of J. S. Bleckley. At the time of his death J. S. Bleckley left a widow, Mrs. J. S. or Sallie Bleckley, who lived in said county until December 4, 1929. For the purpose of providing support and maintenance for his wife, the testator directed in his will that from his estate she should be paid the sum of $500 per annum. Mrs. J. S. or Sallie Bleckley had no property or means of support other than the provision made to her by the will of J. S. Bleckley, which was to be paid from the property jointly accumulated by them both during coverture. J. S. Bleckley and his wife were both living with the petitioner at the time of the death of J. S. Bleckley, January 15, 1925, and his widow continued to live with petitioner until her death, December 4, 1929. Petitioner furnished all the means of support of Mrs. J. S. Bleckley until her death, and no part of the annuity of $500 provided in the will of J. S. Bleckley was ever paid to petitioner for this care and attention. Although he was the son of J. S. Bleckley and Sallie Bleckley, nevertheless the service, care, and attention bestowed by him on his mother during that time was under the terms of an express agreement that he was to be compensated by having *Page 51 
paid to him the $500 per annum from the estate of J. S. Bleckley, and it was understood by both petitioner and Mrs. J. S. Bleckley that the care and attention bestowed upon her by him should be compensated at the rate of $500 per annum. This agreement was made on or about February 3, 1925. Petitioner furnished the board, clothes, and means of support for his mother during all that period, including every necessity of life that she received, as well as her last funeral expense under the agreement and understanding that he would be compensated therefor from the funds bequeathed to her for her benefit by J. S. Bleckley. There is no administrator of the estate of Mrs. J. S. Bleckley, and none has ever been appointed or qualified, but her estate is now and has always been without a legal representative. She left no property other than the claim against the estate of J. S. Bleckley based upon the special bequest hereinbefore pointed out, and she owed no debt other than the debt due petitioner for board, nursing, care and attention from January 15, 1925, to December 4, 1929, and the funeral expense; and there is no means by which he can be paid other than from the assets belonging to the estate of J. S. Bleckley. There is no necessity for an administrator of her estate, as T. H. Bleckley, as executor of the estate of J. S. Bleckley, is a party to this proceeding and has in his hands all the property and assets belonging to the estate of J. S. Bleckley, and all heirs at law of J. S. Bleckley and Mrs. J. S. Bleckley are represented by him, but these heirs at law can, if necessary, be made parties and all issues made by the statements herein set forth determined in this proceeding. This court has assumed jurisdiction of the property and assets of the estate of J. S. Bleckley; and unless it proceeds to do complete justice and equity in the premises, petitioner will lose his rights and is without a complete and adequate remedy at law. The petitioner prays that he be allowed to file this petition in the nature of an intervention in said cause; that T. H. Bleckley be required to pay to him, from the assets of the estate of J. S. Bleckley in his hands as executor, for the service, board, care and attention herein set forth, at the rate of $500 per annum; that, if necessary, all of the children and heirs at law of J. S. Bleckley and Mrs. J. S. Bleckley be made parties to this proceeding; that petitioner have such other and further relief as in law and equity he may be entitled; and that T. H. Bleckley be required to pay him, from the proceeds of the *Page 52 
estate of J. S. Bleckley, the amount which may be found to be due for the services rendered in caring for Mrs. J. S. Bleckley, whether such funds be held as executor, receiver, or in any other capacity.
T. H. Bleckley as executor filed a demurrer, a special plea, and an answer. The answer admitted some of the allegations, but denied any right of recovery, and required proof of all of the alleged transactions between George L. Bleckley and his mother. Other facts were affirmatively alleged, under which it was contended that the plaintiff was barred by laches. The special plea alleged that the plaintiff was barred by the four-year statute of limitations. The following contentions were presented by the demurrer: The petition or intervention does not state a cause of action; the alleged claim is barred by the statute of limitations, having been instituted more than four years after the death of Mrs. J. S. Bleckley; the petition does not show that there was a written contract between George L. Bleckley and his mother; because of this relationship, the plaintiff could not recover for services rendered for his mother without an express or written contract; it does not appear whether the alleged agreement was oral or in writing; the annuity in favor of Mrs. Bleckley reverted to the estate at her death; the petitioner could not sue the executor of the estate of J. S. Bleckley for an alleged debt due to him by Mrs. Bleckley; the petitioner or intervenor did not file a claim against such executor before filing the intervention; the petition or intervention shows on its face that it is barred by lapse of time and by laches; petitioner's right of action, if any, was against the estate of Mrs. Bleckley, and not against the estate of J. S. Bleckley; there was no contract with J. S. Bleckley or his executor; the claim of petitioner is stale, and should not be recognized in equity. The court overruled the demurrer on all grounds, and the executor excepted pendente lite. The jury returned a verdict in favor of the plaintiff for "$400 per annum for four years, ten months, and fourteen days." Upon this verdict a decree was entered against T. H. Bleckley as executor, but it was further ordered that the amount of the judgment be paid by T. H. Bleckley as receiver of the estate of J. S. Bleckley. In his motion for new trial the defendant complained of the verdict on the general grounds, and of alleged errors by the judge in the admission of testimony and in his charge to the jury. The bill of exceptions assigns error on the overruling of the motion for new *Page 53 
trial, and on the ruling excepted to pendente lite. The writ of error was made returnable, and was returned, to the Court of Appeals, but was later transferred to this court. The plaintiff in error contended that the suit was an action at law of which the Court of Appeals has jurisdiction, and that the case ought to be sent back to that court. The defendant in error contended that the proceeding constituted an equity case, and that the Supreme Court should retain jurisdiction.
1. As we construe the allegations and prayers, the plaintiff sought conventional subrogation, an equitable remedy, independently of statute. Whether the petition stated a cause of action for this relief is a different question. The jurisdiction of this court is not limited to good cases in equity, but will embrace both good and bad equity cases. O'Callaghan v. Bank ofEastman, 180 Ga. 812, 818 (180 S.E. 847). Nor is a plaintiff required to classify or name his petition. Malone v.Robinson, 77 Ga. 719 (2-a); English v. Little,164 Ga. 805 (2-a) (139 S.E. 678). The case was properly transferred to this court, not because of the receivership, as to which no question is involved (Brightwell v. OglethorpeTelephone Co., 176 Ga. 65, 166 S.E. 646; Spence v.Miller, 176 Ga. 96, 167 S.E. 188), but because it is a suit for conventional subrogation, of which only a court of equity has jurisdiction. Wilkins v. Gibson, 113 Ga. 31 (38 S.E. 374, 84 Am. St. R. 204); Lee v. Holman, 182 Ga. 559
(186 S.E. 189), s. c. 52 Ga. App. 543 (183 S.E. 837), retained by this court after transfer. The case differs from Watkins v.Woodbery, 148 Ga. 249 (96 S.E. 338), in which the plaintiff sought the relief of subrogation as provided by statute. CompareIrby v. Livingston, 81 Ga. 281 (6 S.E. 591). It differs also from Jasper School District v. Gormley, 184 Ga. 756
(193 S.E. 248), s. c. 55 Ga. App. 391 (190 S.E. 366), returned to the Court of Appeals after transfer, and fromFiremen's Fund Insurance Co. v. Thomas, 177 Ga. 427
(170 S.E. 222), brought first to this court and afterwards transferred (49 Ga. App. 731, 176 S.E. 690), there being in the last two cited cases no prayer for equitable relief. It is contended by the plaintiff in error that the present *Page 54 
petition contained no sufficient prayer for such relief. It did not pray for subrogation by name, but there was a prayer for general relief; and in view of this general prayer and the specific allegations, it is apparent that the plaintiff was seeking the equitable relief of conventional subrogation. "Under a general prayer in an equity case, the plaintiff may have such relief as is consistent with and entirely within the scope of the pleadings." Broderick v. Reid, 164 Ga. 474 (2) (139 S.E. 18). See also McGarrah v. Bank of Southwestern Georgia,117 Ga. 556 (43 S.E. 987).
2. Mrs. Bleckley was a legatee under the will of her husband. The legacy had not been paid, and for the purposes of this case she may be considered as a creditor of the husband's estate. InWilkins v. Gibson, supra, it was held in effect that subrogation may be decreed in favor of any person who advances money under an agreement, express or implied, made either with the debtor or the creditor, that he will be subrogated to the rights and remedies of the creditor; the term "conventional subrogation" being applied in such case because of the agreement. The rule would not be limited to advancement of money, but might include services or other thing of value. The allegations were sufficient to show that the plaintiff rendered services for his mother under an agreement with her as such creditor that he would be subrogated to her rights and remedies against the estate. Therefore the petition was good in substance, to this extent, as a suit for conventional subrogation. Thomas v. Lester,166 Ga. 274 (142 S.E. 870); Cornelia Bank v. First NationalBank, 170 Ga. 747 (154 S.E. 234).
3. The foregoing conclusion will virtually control most of the other questions in the case. The plaintiff was not relying upon a cause of action against Mrs. J. S. Bleckley or her estate, but was seeking to be subrogated to her claim against the estate of J. S. Bleckley. Consequently the statute of limitations which might have applied in case of suit against Mrs. Bleckley or a legal representative of her estate is without application. If the plaintiff is subrogated to her legacy, he had the same time in which to bring suit that she would have had for suit against the executor on the same cause of action. Hull v. Myers, 90 Ga. 674
(4) (16 S.E. 653); Train v. Emerson, 141 Ga. 95
(80 S.E. 554, 49 L.R.A. (N.S.) 950); Lamis v. Callianos, 57 Ga. App. 238
(2) (194 S.E. 923). In such case the period would have been ten years after qualification *Page 55 
of the executor, plus the twelve months exemption from suit accorded to executors and administrators. Code, §§ 3-709, 113-1526; Thornton v. Jackson, 129 Ga. 700 (59 S.E. 905);Garner v. Lankford, 147 Ga. 235 (2) (93 S.E. 411);Whelchel v. Haynes, 148 Ga. 307 (96 S.E. 568); Coney v.Horne, 93 Ga. 723 (20 S.E. 213). The executor qualified on February 2, 1925. The suit was filed in less than eleven years, to wit: November 22, 1935. Accordingly, the suit was not barred even as to the first instalment of the annuity, much less as to instalments later accruing.
4. Another ground of demurrer was that the petition did not show a written contract between the plaintiff and his mother, and did not allege whether the agreement was oral or in writing. The court did not err in overruling this ground. If the contract was one required by law to be in writing, the presumption is that it was in writing. Draper v. Macon Dry Goods Co., 103 Ga. 661
(30 S.E. 566, 68 Am. St. R. 136); Walker v. Edmundson,111 Ga. 454 (36 S.E. 800). More in point, however, is the rule that an agreement for subrogation need not be in writing. Lee
v. Holman, 182 Ga. 559 (3) (186 S.E. 189). Hence it was unnecessary for the plaintiff to allege either that the contract was in writing, or whether it was in writing or not.
5. The demurrant further contended that, owing to the relationship, the plaintiff could not claim that he was entitled to compensation for services to his mother, in the absence of a written contract. There was no merit in this contention. While the presumption would be that the services were rendered voluntarily, and therefore would not support a claim of subrogation, yet it was only necessary to allege sufficient facts and circumstances to indicate that it was the intention of both parties that compensation should be made, and to negative the idea that the services were performed merely because of a natural sense of duty or affection arising out of the relationship.O'Kelly v. Faulkner, 92 Ga. 521 (17 S.E. 847); Phinazee
v. Bunn, 123 Ga. 230 (51 S.E. 300); Edwards v. Smith,42 Ga. App. 730 (157 S.E. 318). As to this feature of the case, the plaintiff was not required to allege a written contract, or even an express contract. The allegations were sufficient to rebut the presumption, and to show an intention by both parties that the plaintiff would be compensated by subrogation to his mother's claim against the estate. *Page 56 
6. There was no merit in the contention presented by the demurrer that the plaintiff failed to show a contract with the testator or with any legal representative of his estate for the performance of the services by the plaintiff to his mother. No such allegation was necessary, in view of the averment that the services were rendered under an agreement with Mrs. Bleckley, as indicated. As stated in Wilkins v. Gibson, supra, such an agreement, either with the debtor or with the creditor, may supply basis for subrogation.
7. In one ground of demurrer it was urged that the plaintiff could not recover, for the reason that on the death of Mrs. Bleckley any portion of the annuity which she had not disposed of reverted under item 5 of the will to the children and grandchildren of the testator. While any portion of the annuity which had not been disposed of would revert as stated, yet the annuity provided for in item 2 was unconditional so long as Mrs. Bleckley lived, and she could agree with the plaintiff that for services rendered by him he would be substituted in her place with respect to such legacy. Such an agreement, if made, constituted a disposition of the legacy by Mrs. Bleckley during her lifetime, within the meaning of the will, to the extent of the value of the services rendered. Accordingly, the plaintiff's action was not defeated by reversion of the legacy on the death of his mother. The defendant further contended that the petition was defective for the reason that it did not show an intention by the parties to effectuate an immediate change of ownership with respect to the legacy in question, as must be done in order to establish a valid equitable assignment. Compare Brown Guano Co.
v. Bridges, 34 Ga. App. 652, 656 (130 S.E. 695). The plaintiff is not relying upon an equitable assignment in the ordinary sense of the term. Such an assignment is one executed between the parties, and entitles the assignee to an immediate right without action of court, whereas an agreement by which a party may be subrogated is not self-executing, but requires a decree of court to give it effect and to fix the rights of the parties. Hull v. Myers, 90 Ga. 674 (4), 683 (16 S.E. 653);Wilkins v. Gibson, supra; Fender v. Fender, 30 Ga. App. 319
(117 S.E. 676); Dabney v. Brigman Motors Co., 32 Ga. App. 652
(124 S.E. 370); 60 C. J. 823, § 124. Accordingly, the petition was not subject to demurrer upon the ground that the alleged agreement did not appear to constitute a presently effective equitable assignment. *Page 57 
8. The defendant further contended that the petition showed upon its face that the suit was barred by laches. The petition does not affirmatively show that it was subject to such defense, and therefore the court did not err in overruling this ground of demurrer. See division 12 infra, and authorities there cited. The petition stated a cause of action, and the demurrer was properly overruled on all grounds.
9. Grounds 5, 6, and 7 of the motion for new trial complained of the admission of testimony as to the value of the services rendered, the contention being that the plaintiff had sued upon an express agreement but was seeking by his evidence to prove a cause of action based upon a quantum meruit. The court did not err in admitting the testimony. The action was based upon the theory of subrogation; and such being the case, the plaintiff could in no event recover more than the value of the services. It was therefore necessary to prove value. Wilkins v. Gibson, supra.
10. Grounds 8, 9, and 10 complained that the court erred in admitting testimony of the wife and of employees of the plaintiff, in regard to the kind and value of the services rendered, and in reference to the alleged agreement between the plaintiff and his mother; the contention being that since the proceeding was a suit against the legal representative of the testator, J. S. Bleckley, the witnesses, as agents of the plaintiff, were incompetent to testify, under the Code, § 38-1603. None of the evidence related to a transaction or communication with the testator, and the evidence statute invoked was not applicable. Florida Central Peninsular Railroad Co.
v. Usina, 111 Ga. 697 (3) (36 S.E. 928); Parker v.Salmons, 113 Ga. 1167 (39 S.E. 475); Hall v. Hilley,139 Ga. 13 (2) (76 S.E. 566); Holmes v. Maddox, 175 Ga. 365
(165 S.E. 92).
11. Ground 13 complained of a charge to the jury on the subject of payment, the alleged error being that the charge was not adjusted to any contention made by the defendant. This assignment of error is not sustained by the record. Grounds 14 and 15 also complained of charges to the jury. These charges were in substantial accord with the principles hereinbefore stated, and were not erroneous for any reason assigned.
12. Other grounds of the motion are controlled adversely to the movant by one or more of the principles hereinbefore stated, and do not require special mention. It was contended, under the general *Page 58 
grounds, that the evidence did not support the verdict, in that no agreement between the plaintiff and his mother was proved as alleged. The direct and circumstantial evidence was sufficient to prove the case as laid.
It is further contended that the evidence established as a matter of law that the plaintiff's case was barred by laches. We can not sustain this contention. As shown in division 3 above, if Mrs. Bleckley had lived and had filed a suit to recover the legacy at the same time the present suit was instituted, her action would not have been barred by limitation. It is true that as against the present plaintiff there might be an equitable bar on the ground of laches, aside from the statute, but it can not be said as a matter of law that the action was barred. The following among other principles relate to laches: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." Code, § 37-119. Mrs. Bleckley died in December, 1929; but even if the plaintiff had sued immediately after her death, the situation would have been the same, so far as lacking testimony from her, although the petition was not filed until nearly six years after her death. It does not appear that there were any funds in the estate from which the plaintiff might have realized payment until after a sale of the real estate, and this was so involved that a judgment could not have been levied if recovered.
It is insisted that the plaintiff should have given the defendant notice of his claim, and that none was ever given before the suit was filed, although much litigation had taken place between the parties. While the plaintiff's failure to give notice and his delay in filing suit might have tended to cast suspicion upon his claim and to affect his credibility as a witness, these were matters for the jury. The plaintiff himself gave very little testimony, depending upon the testimony of others. It may be that the court considered that he was incompetent to testify as to transactions and communications with his mother. We do not say that he was or was not competent, since the question is not involved in the case as presented to this court. The evidence did not demand the inference that the defendant's position or the condition of the estate was in any way altered by reason of the delay, or that the rights of any other person were affected thereby. "There is no absolute *Page 59 
rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another. Each case is to be determined according to its own particular circumstances. . . Laches is not, like limitations, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced, an inequity founded on some intermediate change in conditions." Equitable Building Loan Association v. Brady, 171 Ga. 576, 585 (156 S.E. 222);Citizens Southern National Bank v. Ellis, 171 Ga. 717
(3-c) (156 S.E. 603); Bass v. Milledgeville, 180 Ga. 156
(178 S.E. 529); Dollar v. Fred W. Amend Co., 184 Ga. 432
(191 S.E. 696), 60 C. J. 829, § 133.
The evidence supported the verdict. The court did not err in refusing a new trial. It is contended in the brief that the decree is erroneous, so far as it directed T. H. Bleckley, as receiver, to pay the sum recovered against T. H. Bleckley as executor, for the reason that such direction was not in accordance with the petition and the recovery thereon. There is no assignment of error on the decree, raising this question.Floyd v. Boss, 174 Ga. 544 (6), 549 (163 S.E. 606);Bolton v. Kelly, 169 Ga. 309 (5) (150 S.E. 203); DeLoach
v. Sikes, 166 Ga. 39 (5) (142 S.E. 150).
Judgment affirmed. All the Justices concur, except Grice, J.,disqualified.